In re Jerald B. DEWS, Tamera
A. Dews, Debtors.

**Bankruptcy No. 99–55588.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 23, 1999.

Crystal I. Zellar, Zanesville, OH, for
Debtors.

Larry J. McClatchey, Columbus, OH,
Chapter 7 Trustee.

Frank M. Pees, Jeffrey M. Kellner, Office of the Chapter 13 Trustee, Worthington, OH.

Alexander G. Barkan, Columbus, OH,
Assistant United States Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order
constitutes the Court's findings of fact and
conclusions of law on the Motion for Conversion of Chapter 7 Case to Chapter 13
Case filed on September 22, 1999, by the
Debtors, Jerald B. and Tamera A. Dews
("Debtors") and the Objection of the Chapter 7 Trustee, Larry J. McClatchey
("Trustee"), filed on October 12, 1999. On
October 19, 1999, the Court conducted a
hearing and heard testimony from the
Debtor, Jerald B. Dews. Pursuant to the
Court's October 21, 1999, Order, the Debt-

ors and the Trustee filed post-trial memoranda on November 22, 1999.

Subsequently, on December 2, 1999, the Trustee filed a Motion to Strike Affidavit, and in this pleading requests the Court strike an affidavit of the Standing Chapter 13 Trustee attached to the Debtors' post-trial memorandum or in the alternative that the affidavit be disregarded on the basis that no testimony from the Standing Chapter 13 Trustee was offered during the October 19, 1999, hearing. On December 8, 1999, the Debtors filed a Memorandum in Opposition. The Court recognizes it asked the parties to address in post-trial memoranda the issue of the confirmability ·of the proposed plan; however, the vehicle of an affidavit of a party not subject to cross-examination attached to a post-hearing memoranda is not what the Court contemplated. Accordingly, the affidavit has been disregarded; however, the Court has considered both parties' arguments on the confirmability of the proposed plan. In addition, the Court has independently examined other pleadings in the file relevant to confirmation.

The dispute between the Debtors and the Trustee revolves around whether debtors in general have a one-time, absolute right to convert a chapter 7 case to chapter 13, or whether conversions are subject to judicial scrutiny of debtors' motivations, good faith, eligibility and the confirmability of any proposed plan. The Court has concluded from a review of the United States Bankruptcy Code and case law that there is no absolute right to convert, and that such requests are subject to significant judicial review. The Court, however, finds that under the circumstances in this case, the Debtors' request should be granted. A brief history of the Debtors' financial circumstances and the dispute between the parties will illustrate the bases for the Court's decision.

Approximately nine years ago, the Debtor, Mr. Dews, lost his employment as a marketing engineer with McGraw Edison Company due to a hostile takeover by Cooper Industries. Mr. Dews was offered employment by Cooper in Milwaukee, Wisconsin, but because of strong community ties decided not to uproot his family. In addition to this difficulty, Mr. Dews is also a diabetic, and takes insulin twice a day in addition to four oral medications. In order to make ends meet, the Debtors cashed retirement plan contributions from McGraw Edison, and started a seasonal ice cream business. This business ultimately failed, and the credit cards were used to fund living expenses during periods in which the business was not operational. All of these difficulties led to the voluntary chapter 7 bankruptcy filing commenced on June 21, 1999.

The Debtors, who have never filed bankruptcy before, scheduled a home valued at $48,000.00, subject to a $30,000.00 first mortgage and a federal tax lien in the amount of $15,000.00. The other significant asset scheduled by the Debtors is their 1996 Ford Taurus with 69,000 miles valued at $6,800.00 and subject to a lien in the amount of $16,600.00 held by Ford Motor Credit. The Debtors scheduled the sum of $77,433.09 in general unsecured debt, primarily composed of credit card obligations. According to the budget filed with the chapter 7 schedules, the Debtor, Mr. Dews, is now employed as an automobile salesman, and the Debtor, Mrs. Dews, is employed as a dental receptionist. The Debtors in their budget filed with the chapter 7 schedules indicate they had at that time monthly net income in the amount of $1,599.19, and monthly expenses in the amount of $1,908.35. The Debtors also have two sons in their household, who are twelve and nineteen years of age.

On August 31, 1999, the Trustee filed an Objection to Debtor's Homestead Exemption, and asserted that because the home is only titled to the Debtor, Mrs. Dews, Mr. Dews is not entitled to claim an exemption. According to the Trustee's Application to Retain Counsel filed on September 22, 1999, and assuming his exemption objection is sustained, at least the sum of $13,-

000.00 in nonexempt equity is available for administration. After the deduction of administrative expenses, the Trustee projects a distribution to creditors in the amount of approximately $11,500.00. In addition to this exemption dispute, the Debtors were unable to negotiate a favorable reaffirmation agreement to keep their only means of transportation, the 1996 Ford Taurus. All of these issues prompted the filing of the instant conversion request.

The Chapter 13 Plan filed by the Debtors on September 22, 1999, includes a five percent dividend to unsecured creditors and provides for the bifurcation of the Internal Revenue Service and Ford Motor Credit secured claims and payment as general unsecured claims to the extent to which their amounts exceed remaining equity in the home and the automobile, respectively. The Debtors propose to make monthly payments of $335.00 for the first twelve months and then $425.00 per month for the remainder of the Plan. The Debtors' amended budget that was filed on September 22, 1999, to support the proposed plan shows the same amount of income, but includes reduced expenses that would leave a monthly balance of $335.00 to fund any proposed plan payments. The adjustments include elimination of cable, reduction in food from $400.00 to $300.00 per month, reductions in medical and automobile insurance expenditures, and most significantly, the elimination of the current car payment that would be made through the Standing Chapter 13 Trustee. The Debtor, Mr. Dews, testified that the medical expenses have decreased since his doctor has expressed a willingness to supply samples of his diabetes medication, and next year he will be eligible for coverage under Mrs. Dews' health insurance.

The gist of the Trustee's opposition to conversion is that his administration of the home would result in payment in full to at least the Internal Revenue Service. This, he argues, is a superior result when compared to the five percent distribution over time the Debtors would offer on any unsecured portion of that claim. Further, the Trustee asserts that the treatment of the Internal Service is violative of the confirmation provisions of the Bankruptcy Code (11 U.S.C. § 1325(a)(5)(B)), and given the financial condition of the Debtors they will not be able to complete plan payments as proposed (11 U.S.C. § 1325(a)(6)). The Trustee also questions the scheduled value of the home, and asserts that the sale might bring a higher return. The Debtors counter that they both now have stable employment, and they are in good health. The Debtors assert that if the Trustee is correct that the Internal Revenue Service will be entitled to more money to meet the confirmation standards, this issue can be addressed by modifying the proposed plan to provide step increases in the later years when their income will have increased.

While the Trustee's concerns are valid, they must be viewed in the overall context of the purpose of bankruptcy in general and chapter 13 specifically. Even considering the backdrop of the most current congressional efforts to reform the bankruptcy system, we can all agree that it serves dual purposes-the forgiveness of indebtedness and the financial rehabilitation of debtors so that they can reenter the stream of commerce. *See generally,* Joseph A. Guzinski, *Failure and Forgiveness: Rebalancing the Bankruptcy System,* 15 Bankr.Dev. J. 401 (1999) ( review of book under same title by Karen Gross (1997)) (the Karen Gross book explores the dual purposes in depth, and its premise is that bankruptcy is primarily a tool of social, political and economic policy). We should also be able to agree that chapter 13 offers significantly enhanced protections compared to chapter 7 for that segment of the consumer debtor population with extensive unsecured debt due to illness, loss of or reduction in employment or sheer over-spending. Such debtors, so long as they have a modest amount of regular income, and can establish they have approached the system in "good faith," may have their plans confirmed in

order to save essential assets such as homes and automobiles. *See generally,* Bradley M. Elbein, *The Hole in the Code: Good Faith and Morality in Chapter 13,* 34 San Diego L.Rev. 439 (1997) (this article explores in depth the concept of "good faith" in the chapter 13 process, and how it is used by courts in controlling access to the remedy).

The United States Bankruptcy Code provision in question provides as follows:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12 or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable. 11 U.S.C. § 706(a).

There is a split in authority on the issue whether this provision creates an absolute, one-time right to convert a chapter 7 case to chapter 13. *See generally,* Bruce H. White, *Is a Debtor's Right to Convert Under § 706(A) Really Absolute?,* 17–FEB Am. Bankr.Inst. J. 28 (1998) (The article briefly explores case law on both sides and their rationale). Some courts literally interpret the statutory language and legislative history to mandate, that without regard to the actions and/or motivations of the debtors, and absent extreme circumstances, cases must be converted upon debtors' requests. *In re Martin,* 880 F.2d 857, 858–859 (5th Cir.1989); *In re Porras,* 188 B.R. 375, 377–380 (Bankr.W.D.Tx. 1995); *In re Verdi,* 241 B.R. 851 (Bankr. E.D.Pa.1999). On the other hand, some courts decline to take the literal approach, and examine the motivation of debtors, including whether they are acting in good faith. *In re Thornton,* 203 B.R. 648, 650–653 (Bankr.S.D.Ohio 1996); *In re Starkey,* 179 B.R. 687, 691–698 (Bankr.N.D.Okla. 1995); *In re Lesniak,* 208 B.R. 902, 904–907 (Bankr.N.D.Ill.1997).

■ This Court declines to follow the line of cases that take the literal approach. While respecting their rationale, they fail to recognize that in the context of an inherently equitable remedy, there may be instances where the requests of debtors should not be honored. First, courts should make some determination regarding the motives of the debtors; i.e., are they honestly trying to pursue a plan of repayment to creditors while retaining essential assets such as homes and automobiles, or are they using the system simply to forestall collection efforts, without any real hope of repayment. Second, courts should make a preliminary inquiry as to the quality of any proposed chapter 13 plan, and whether it would meet confirmation requirements. It is this Court's view that it is a waste of the parties' and court's resources to simply convert cases to chapter 13 where there is a high likelihood that the plans cannot be confirmed.

■ In the instant case, however, the Court is persuaded that the Debtors are putting forth an honest effort to repay their creditors. True, they are primarily motivated to save their home from administration by the Trustee, but it should not be a surprise to anyone that the Debtors would like to keep their home. While the budget is tight, and the Debtors will have to address the treatment of the Internal Revenue Service claim, these impediments are not currently so great that this Court can now determine that the Debtors will be unable to confirm a plan and complete plan payments. Also, other than the assertion that the Debtors may have undervalued their home, there is no allegation of bad faith, and the value of the home will be addressed through the mandatory appraisal process once the case is converted to chapter 13. It is this Court's view that the bankruptcy system and the chapter 13 process were established to help financially rehabilitate people like the Debtors, and they should be given a fair chance. For these reasons, the Debtors' Motion for Conversion of Chapter 7 Case to Chapter 13 Case is **GRANTED**.

**IT IS SO ORDERED.**