**In re Dyann PAKURIS, Debtor**

**No. 98–12119 KJC.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 11, 2001.

Andrew N. Schwartz, Philadelphia, PA, for debtor.

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for trustee.

Christine Shubert, Tabernacle, NJ, trustee.

## OPINION

KEVIN J. CAREY, Bankruptcy Judge.

■ Before the Court is the Motion of Debtor To Convert Case From A Proceeding Under Chapter 7 To A Proceeding Under Chapter 13 Pursuant To 11 U.S.C. § 706(a) (the "Conversion Motion"), which raises an issue on which there appears to be no controlling law in this Circuit: whether a chapter 7 debtor who has already received her discharge should be permitted to convert her case to one under chapter 13.[1] For the reasons which follow, the Conversion Motion is denied.[2]

## BACKGROUND

On February 18, 1998, the debtor filed a voluntary chapter 7 petition. Christine Shubert was appointed as trustee for her case. A meeting of creditors was held on March 27, 1998 and, on June 18, 1998, the trustee filed a "Report of No Assets." The debtor's schedules and statement of financial affairs were filed with the voluntary petition and amended on April 8, 1999 (to revise the value of the debtor's real property) and on June 24, 1998 (to add a tax refund and change the debtor's exemption election from federal to state). A court order approving the trustee's report and discharging the debtor was entered on July 22, 1998.

Prior to and during the bankruptcy case, the debtor and her husband were involved in a divorce proceeding in the Court of Common Pleas, Montgomery County ("State Court"), that included litigation regarding support and equitable property distribution. However, the debtor did not disclose the marital litigation or her interest in the equitable property distribution in her original or amended schedules or statement of financial affairs. In July 1999, the trustee received an anonymous letter with attachments dated July 6, 1999, alleging that the debtor failed to list all of her assets in her schedules and statement of financial affairs.[3]

On July 21, 1999, the trustee filed a motion to reopen the chapter 7 case and

---

1. Some courts have adopted a *per se* rule: once a debtor receives a chapter 7 discharge, she is barred from converting her case under § 706(a). *In re Lesniak*, 208 B.R. 902, 906 (Bankr.N.D.Ill.1997); *In re Jeffrey*, 176 B.R. 4, 6 (Bankr.D.Mass.1994); and *In re Jones*, 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990). However, *Jones* was expressly rejected by the Tenth Circuit Court of Appeals in *In re Young*, 237 F.3d 1168, 1174, fn. 5 (10th Cir.2001). The Fifth Circuit Court of Appeals also considered this issue in the case *In re Martin*, 880 F.2d 857 (5th Cir.1989), writing: "An exhaustive review of the legislative history reveals nothing which would indicate that a post-discharge motion to convert should be treated differently from any other." *Martin*, 880 F.2d at 859. *See also In re Mosby*, 244 B.R. 79 (Bankr.E.D.Va.2000) (providing a thorough analysis against the use of a *per se* rule and

holding that the entry of a chapter 7 discharge should not bar subsequent conversion under § 706(a)). We could locate no published Third Circuit Court of Appeals decision on this issue. This Court agrees with the Fifth and Tenth Circuit Courts of Appeals and with *Mosby* and holds that the prior entry of a chapter 7 discharge should not, on its own, bar the debtor from converting a chapter 7 case under § 706(a).

2. This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052.

3. A copy of the July 6, 1999 letter was admitted into evidence as Debtor's Exhibit C at the March 21, 2001 hearing on the Conversion Motion.

commenced an adversary proceeding under 11 U.S.C. § 727, seeking revocation of the debtor's chapter 7 discharge. The case was reopened by order dated September 14, 1999. On October 27, 1999, the Court entered an order revoking the debtor's discharge.[4] The debtor filed amended schedules dated January 18, 2000 and hired new bankruptcy counsel. On July 5, 2000, the debtor filed a motion to reopen the adversary proceeding, averring, among other things "... that her discharge had not been obtained through fraud, nor did she knowingly and fraudulently fail to report property of the Estate, such omissions resulting from Debtor's mistake in relying on advice of counsel and/or the mistake or neglect of prior counsel."[5] On August 1, 2000 an order was entered vacating the previous revocation of discharge.

Since the reopening of the bankruptcy case, the chapter 7 trustee has pursued the property distribution claim and eventually reached an agreement with the debtor's husband. On December 29, 2000, the trustee filed a motion to approve the property settlement agreement (the "Settlement Motion"), which settlement was opposed by the debtor. A hearing on the Settlement Motion was scheduled for February 7, 2001. On that date, the debtor filed a motion asking that this Court abstain from considering the Settlement Motion and that the determination of all "domestic relations issues" be left to the State Court (the "Abstention Motion"). In light of the filing of the Abstention Motion (opposed by the chapter 7 trustee), the Court scheduled that motion for hearing and rescheduled the hearing on the Settlement Motion for the same date (March 5, 2001). Then, on February 26, 2001, the debtor filed the Conversion Motion.[6] On March 21, 2001 a hearing was held to consider the Conversion Motion, which Motion was opposed by the chapter 7 trustee.

## LEGAL STANDARD

Section 706(a) of the Bankruptcy Code provides:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

The legislative history of this section notes that it was intended to grant the debtor a one-time "... absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case," unless the case had already been converted to chapter 7 from chapter 11 or 13. H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 380 (1977); S. REP. NO. 989, 95TH CONG. 2D SESS. 94 (1978), U.S.Code Cong. & Admin.News

---

4. The debtor did not appear at the October 27, 1999 hearing on the adversary proceeding because, based upon conversations with her attorney, she believed that the matter had been resolved and there was no need to appear at the hearing. (Transcript of March 21, 2001 hearing, p. 13).

5. Motion Of Defendant To Reopen Case And For Relief From The Order Revoking and Denying Discharge filed July 5, 2000, paragraph 9. This motion was admitted into evidence as Debtor's Exhibit J at the March 21, 2001 hearing on the Conversion Motion.

6. While Local Bankruptcy Rule 9014–2(a)(3), (d) permits the Court to dispose of a motion to convert from chapter 7 to chapter 13 without a hearing, under these circumstances, the Conversion Motion was listed for hearing on notice, giving interested parties, particularly the chapter 7 trustee, the opportunity to be heard. Hearings on the Settlement Motion and the Abstention Motion have been carried along until resolution of the Conversion Motion.

1978, 5787, 5880, 6336. The legislative history explains that the policy behind the provision is always to allow the debtor an opportunity to repay his debts. *Id.*

While the language of § 706(a) may seem clear on its face, the statute and its legislative history have been analyzed extensively by both appellate and bankruptcy courts across the country.[7] Courts are divided about how to approach a debtor's request for conversion.

Some courts have held that the debtor's right to convert under § 706(a) is absolute as long as the debtor has not previously converted her case and she meets the eligibility requirements for being a debtor in the chapter to which the debtor is trying to convert. *See, e.g., In re Young,* 237 F.3d 1168, 1173 (10th Cir.2001); *In re Finney,* 992 F.2d 43, 44–45 (4th Cir.1993); *In re Martin,* 880 F.2d 857, 859 (5th Cir. 1989); *In re Agresta,* 2000 WL 1639570, *2 (Bankr.M.D.Pa.2000); *In re Mosby,* 244 B.R. 79, 83–84 (Bankr.E.D.Va.2000); *In re Verdi,* 241 B.R. 851, 855 (Bankr.E.D.Pa. 1999); *In re Bowman,* 181 B.R. 836, 842 (Bankr.D.Md.1995); *In re Sieg,* 120 B.R. 533, 535 (Bankr.D.N.D.1990).

Other courts disagree that a debtor's right to convert a chapter 7 case is absolute, instead holding that:

> All courts possess inherent power to protect their jurisdiction and process from abuse...It follows that any action taken before this Court, under 11 U.S.C. or any other statute, is always subject to review for bad faith, as an abuse of the court's jurisdiction or process, for gross inequity (e.g. sufficient to raise an estoppel) or on similar ground. This includes attempted conversion from Ch. 7 to Ch. 13 under § 706(a).

*In re Spencer,* 137 B.R. 506, 511 (Bankr. N.D.Okl.1992). These courts have reviewed the facts of the particular case to determine whether the debtor should be allowed to convert her case under § 706(a). *See, e.g., In re Kuntz,* 233 B.R. 580, 585 (1st Cir. BAP 1999) (holding that a debtor's one-time right of conversion could be denied in "extreme circumstances" constituting bad faith, although the fact that the debtor waited three months before turning over inheritance money to the trustee did not "rise to that level of egregiousness"); *In re Dews,* 243 B.R. 337, 340 (Bankr. S.D.Ohio 1999) (holding that courts should examine the debtor's motivation for conversion and whether a proposed plan could meet confirmation requirements before granting a motion to convert); *In re Sully,* 223 B.R. 582, 584 (Bankr.M.D.Fla.1998) (holding that a conversion request is subject to court review for lack of good faith or abuse of the court's jurisdiction or process); *In re Tardiff,* 145 B.R. 357, 360–61 (Bankr.D.Me.1992)(holding that courts should consider a number of factors when analyzing a conversion motion under § 706(a), including: (i) whether conversion would operate to pervert, rather than implement, congressional policy; (ii) whether the debtor can show that she is capable of proposing a confirmable plan; (iii) whether the debtor can demonstrate good faith; (iv) whether conversion would impact efficient administration of the bankruptcy laws; and (v) the impact of conversion on parties in interest); *In re Spencer,* 137 B.R. at 512 (holding that, "In the presence of extreme circumstances, debtor's right to convert can be conditioned or denied as necessary to prevent injustice to other parties and imposition on the Court.").

---

**7.** *See generally* Bruce H. White, *Is A Debtor's Right To Convert Under § 706(a) Really Absolute?,* 17 Feb Am. Bankr.Inst. J. 28 (1998).

■ Although the courts are divided over whether § 706(a) gives a chapter 7 debtor an absolute right to convert, most courts will not allow a contested conversion without some examination of the facts. Indeed, many of the courts holding that a debtor has a one-time absolute right to convert have either (i) recognized that conversion may not be proper in situations involving "extreme circumstances" (thereby requiring some analysis of facts) [8] or (ii) engaged in some type of equitable analysis of the facts, either through a discussion of whether the case should be converted and then re-converted to chapter 7 [9] or whether the debtor can propose or has proposed a confirmable plan.[10] We hold that a review of the facts of the particular case is appropriate when considering an objection to a § 706(a) motion.

■ The Third Circuit Court of Appeals has held that chapter 13 petitions must be filed in good faith. *In re Lilley, Jr.*, 91 F.3d 491, 496 (3d Cir.1996). It follows that conversion to a chapter 13 case must likewise be sought in good faith since the bankruptcy court can reconvert the case to chapter 7 under 11 U.S.C. § 1307(c) for cause. In *Lilley*, the Third Circuit Court of Appeals joined other circuit courts and decided that a good faith filing analysis "must be assessed on a case-by-case basis in light of the totality of the circum-

stances," including a review of certain factors, such as the following:

> . . . the nature of the debt. . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Lilley*, 91 F.3d at 496, citing *In re Love*, 957 F.2d at 1350, 1357 (7th Cir.1992).

■ Therefore, this Court holds that the debtor's so-called "absolute" right of conversion under § 706(a) must be read in conjunction with (and tempered by) Code Sections 706(d) [11] and 1307(c). In deciding a contested motion to convert under § 706(a), this Court will consider the totality of the circumstances by reviewing the factors set forth in *Lilley* and *Tardiff*, including the following:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
> (ii) whether the debtor can propose a confirmable chapter 13 plan;
> (iii) the impact on the debtor of denying conversion weighed against the preju-

---

8.  *Martin*, 880 F.2d at 859. The *Martin* court recognized that some courts will interfere with a debtor's "absolute" right to convert upon a showing of "extreme circumstances." *Martin*, 880 F.2d at 859. The *Martin* court did not discuss what "extreme circumstances" should deny a debtor his one-time right to conversion.

9.  *Finney*, 992 F.2d at 45; and *Bowman*, 181 B.R. at 845–46.

10.  *Young*, 237 F.3d at 1174; *Verdi*, 241 B.R. at 857–58; *Sieg*, 120 B.R. at 536. *See also*,

*Mosby*, 244 B.R. at 87 and 92 (Court should engage in a good faith analysis in connection with confirmation of the chapter 13 plans proposed by the debtors and, at that time, would evaluate whether the cases should be reconverted to chapter 7).

11.  11 U.S.C. § 706(d) states: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

dice to creditors caused by allowing conversion;

(iv) the effect of conversion on the efficient administration of the bankruptcy estate; and

(v) whether conversion would further an abuse of the bankruptcy process.

Accordingly, this Court will analyze the facts of this case in light of the above factors.

### DISCUSSION

■ The first factor for consideration, as listed above, is whether the debtor's request to convert her case to chapter 13 is being sought in good faith. The debtor's good faith has been questioned in the present case due to her failure to disclose her interest in the equitable property distribution on her schedules and statement of financial affairs until the trustee learned about the asset by an anonymous letter. However, the debtor has alleged that her failure to disclose the asset was not due to fraud, but based upon the mistake or neglect of prior counsel. The debtor's discharge was ultimately reinstated on August 1, 2000. One of the factors in *Lilley* is whether the debtor has been forthcoming with the bankruptcy court and creditors. Likewise, in *Spencer, supra.,* the court noted that a debtor's conduct pre-bankruptcy and in chapter 7 before conversion are relevant factors in analyzing a debtor's motive or bad faith in seeking conversion (*Spencer,* 137 B.R. at 514), but:

> ...courts should exercise great caution in limiting access to Ch. 13 solely on the basis of past conduct. If Ch. 13 is open only to debtors who never did anything at all wrong, then Ch. 13 will be open to very few; and such stringent screening would be inconsistent with Congression-

al intent to encourage resort to Ch. 13... As a rule, debtor's conduct before Ch. 13 should be less important than his prospects and proposals in Ch. 13.

*Spencer,* 137 B.R. at 515. Accordingly, standing alone, the debtor's nondisclosure of her interest in the equitable property distribution in this case does not weigh heavily against her.

■ More important in this good faith analysis is her motivation in seeking conversion. The timing of the filing of the Conversion Motion, together with the filing of the Abstention Motion, and the debtor's testimony at the hearing on March 21, 2001 (Tr. at 34), indicate that the debtor is seeking to convert her case to chapter 13 to regain control of the equitable property distribution litigation. As noted above, the legislative history of § 706(a) provides that the policy behind the statute is to give debtors an opportunity to repay their debts. In the present matter, the debtor's motivation for conversion is not to repay her creditors, but to regain control of the equitable distribution part of her marital litigation. As will be discussed in more detail below, conversion at this time will prejudice creditors. While denying conversion may have an adverse impact on the debtor, the debtor placed herself voluntarily into a chapter 7 proceeding and has obtained the benefits of the proceeding, including a chapter 7 discharge. The debtor must also accept the consequences of a chapter 7 proceeding.[12] After having accepted the benefits of her chapter 7, the debtor's attempt to avoid the consequences thereof, by converting to chapter 13 at this time, demonstrates a failure to meet the good faith filing requirement.[13]

---

12. *Cf. In re Hopkins,* 261 B.R. 822 (Bankr. E.D.Pa.2001).

13. My colleague, Chief Judge Fox, has had occasion recently to examine who, once the debtor's good faith (or lack thereof) has been

A second factor for the court's review and analysis is the debtor's ability to propose a confirmable chapter 13 plan. Courts have recognized that conversion should not be permitted when it would serve no point, for example, in matters when the debtor is demonstrably incapable of proposing a feasible plan. *Tardiff,* 145 B.R. at 360. In this case, the debtor testified that, presently, she did not have sufficient income to fund a chapter 13 plan, but that she expected to have sufficient income after the conclusion of her marital litigation (Tr. at p. 19 and pp. 42–43). The debtor could not estimate when the marital litigation would be resolved (Tr. at p. 35).[14] Accordingly, the debtor has not provided any evidence of her ability to propose a confirmable chapter 13 plan.[15]

Third, we weigh the impact to the debtor of denying conversion against the prejudice to the creditors of allowing conversion. In the present case, the trustee has negotiated a property settlement with the debtor's husband which, if approved, would provide payment of $60,000 into the estate.[16] Conversion at this point would deprive creditors of their share of this proposed recovery in a timely and efficient manner. If the case were converted, any future plan proposed by the debtor could not be confirmed under § 1325(a)(4) unless it proposed to pay the creditors at least as much as they would receive in a chapter 7 liquidation. However, the creditors will bear the risk of whether the debtor will be able to meet this requirement. The debtor has argued that there are more than sufficient assets in the estate to pay those creditors who have filed proofs of claim. At the hearing on March 21, 2001, the debtor introduced evidence that the total of the claims filed in her chapter 7 case

raised, has the ultimate burden of persuasion on the issue. *In re Krebs,* Bky. No. 01–12942 (Bankr.E.D.Pa. April 27, 2001). For the reasons given in *Krebs,* I agree with my colleague that this ultimate burden rests upon the debtor. *Id.,* slip op. at p. 8.

**14.** The debtor testified that the marital litigation had dragged on based, partially, on the fact that her husband (an attorney) had been overly litigious (Tr. at p. 48). However, in a proceeding involving such acrimony, the Court is unable to conclude, without more, whether Mr. Pakuris is solely responsible for the length of the marital proceedings.

**15.** The facts of this case are similar to the *Martin* case that was before the Fifth Circuit Court of Appeals, except in one material respect—in *Martin,* the debtor filed a plan with her motion to convert from chapter 7 to chapter 13, which proposed to pay creditors in full. In *Martin,* the debtor had also filed chapter 7 bankruptcy prior to completing an equitable property settlement with her ex-husband. The debtor received a discharge. The *Martin* trustee sought bankruptcy court authority for a private sale which would conclude a proposed settlement with the ex-husband. In response, the debtor sought to convert her case to chapter 13. Along with her motion to convert, the *Martin* debtor, unlike Ms. Pakuris, filed a plan which provided for 100% repayment of her debts. *Martin,* 880 F.2d at 858. The *Martin* Court decided that the debtor had an absolute right to convert under § 706(a) and noted that courts should refuse to interfere with conversion in the absence of "extreme circumstances." *Martin,* 880 F.2d at 859. While the debtor's motivation in *Martin* may have been to regain control of the property settlement (as in the present case), the *Martin* debtor intended to repay her debts in full. As discussed *infra.,* we are unable to conclude that the debtor here can do so. The *Martin* Court decided that any question of good faith would be addressed in the context of plan confirmation under § 1325(a)(3). *Martin,* 880 F.2d at 860.

**16.** Settlement Agreement Concerning Marital Property And The Settlement Of All Claims Pertaining To Equitable Distribution Between Christine Shubert, Trustee Of The Estate Of Dyann Pakuris, and Christopher Pakuris, Husband Of The Debtor, paragraph 4(b). The Settlement Agreement was admitted into evidence as Trustee's Exhibit B at the March 21, 2001 hearing on the Conversion Motion.

equaled approximately $31,000. (Tr. at p. 33–34). However, the debtor fails to account for chapter 7 administrative claims that may be paid after conversion through the chapter 13 plan. *See, Spencer,* 137 B.R. at 516; 11 U.S.C. § 1322(a)(2). Further, there is no guarantee that the debtor will do as well or better than the trustee in negotiating or litigating an equitable property distribution with her husband. Other courts have refused to shift this risk to creditors, even though denying conversion deprives the debtor of the ability to control the litigation and even though there exists the possibility of recovery of more assets for the estate, creditors and, possibly, the debtor. *Sully,* 223 B.R. at 585; *Bowman,* 181 B.R. at 845. Under these circumstances, the Court is unwilling to shift to creditors the risk of the outcome of the equitable distribution litigation.

A fourth factor for the Court's consideration is the effect of conversion on the efficient administration of the bankruptcy estate. The present case has proceeded as a chapter 7 case (filed, closed and re-opened) for more than three years. The trustee has requested approval of a settlement involving what appears to be the sole asset of the estate with value for creditors, thereby bringing the end of the case into sight. On the other hand, if the debtor's Conversion Motion were granted, creditors would again find themselves waiting, for an undetermined period of time, for the conclusion of the marital litigation before the debtor can even propose a repayment plan. Clearly, conversion would interfere with prompt administration of the bankruptcy estate.

■ Finally, a court may also consider whether conversion would further an abuse of the bankruptcy process. The debtor in this case is not a serial filer. *See In re Calder,* 93 B.R. 739 (Bankr.D.Utah 1988). However, a motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors. *See, Sully,* 223 B.R. at 585; *Tardiff,* 145 B.R. at 360. In the present case, the debtor has no current plan for repayment and it is uncertain when, if ever, such a plan can be proposed. Conversion, therefore, is not consistent with furthering the bankruptcy process and unfairly prejudices creditors.

After consideration of the factors stated above, the facts of this case require denial of the Conversion Motion. An appropriate order follows.[17]

### ORDER DENYING DEBTOR'S CONVERSION MOTION

**AND NOW,** this 11th day of May, 2001, for the reasons given in the accompanying Opinion, the Debtor's Motion To Convert Case From A Proceeding Under Chapter 7 To A Proceeding Under Chapter 13 Pursuant to 11 U.S.C. § 706(a) is **DENIED;**

and it is further **ORDERED** that:

(a) the debtor's Motion For Extension of Time to File Brief, that was filed with this Court on February 27,

---

**17.** On February 27, 2001, the debtor filed a "Motion of Debtor For Extension of Time to File Brief" (the "Extension Motion") asking that she be permitted to submit her brief in support of her Abstention Motion after resolution of the Conversion Motion. The Extension Motion will be granted. Hearings to consider the Abstention Motion and the Settlement Motion will be scheduled on the same date. On the date of the hearings, the parties should be prepared to present any evidence and make argument related to the Abstention Motion. The parties should also be prepared at that time to present any evidence and argument related to the Settlement Motion. I leave for consideration at such hearings the effect, if any, of any findings of fact or conclusions of law herein upon the relief requested in the Abstention Motion or the Settlement Motion.

2001, is hereby GRANTED and debtor shall file her brief(s) in support of the Abstention Motion and in response to the Settlement Motion on or before May 25, 2001;

(b) the chapter 7 trustee may file, but is not required to file, reply brief(s) on or before June 4, 2001; and

(c) hearings to consider the debtor's Abstention Motion and the trustee's Settlement Motion shall be held on June 11, 2001, at 10 a.m. in Courtroom No. 1, U.S. Bankruptcy Court, Robert N.C. Nix Federal Building, 900 Market Street, 2nd Floor; Philadelphia, PA 19107.