In re Lillowtie KRISHNAYA a/k/a Lillowtie Dhanraj, Debtors.

No. 00 B 14646 (REG).

United States Bankruptcy Court, S.D. New York.

June 6, 2001.

David Brodman, by David Brodman, Bronx, NY, for Debtor.

Stuart Irwin Davis, by Stuart Irwin Davis, Bronx, NY, for Debtor.

Rattet & Pasternak, by Daniel S. Alter, Harrison, NY, for Creditor Lakram Seebaran.

### DECISION AND ORDER ON MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 13

ROBERT E. GERBER, Bankruptcy Judge.

The Debtor has moved, pursuant to Section 706(a) of the Bankruptcy Code (the "Code"), to convert this chapter 7 case to a case under chapter 13 of the Code. Lakram Seebaran ("Seebaran")—a creditor in the chapter 7 case, and the plaintiff in *Seebaran v. Krishnaya,* Case No. 01–2073, an adversary proceeding brought pursuant to Section 523(a) of the Code to determine the dischargeability of Seebaran's claim in the chapter 7 case—opposes conversion.[1] Creditor Seebaran has suggested that a material reason—and perhaps the only reason—for the requested conversion is to evade, and/or moot, the now-pending adversary proceeding, and that confirmation of a chapter 13 plan is highly unlikely. The Debtor has not denied such motivation. She argues, however, that the right to convert from chapter 7 to 13 is absolute, and that while confirmation of a chapter 13 plan might be difficult, it is inappropriate to consider that issue now.

The motion presents issues of first impression in this District, though its underlying issues have been considered, in considerable part (albeit with divergent conclusions), elsewhere: (1) whether a debtor may convert his or her case from chapter 7 to 13 as a matter of absolute right and irrespective of motive or anything else, and (2) if there are any limits to the debtor's right, whether either (a) a

motivation to sidestep a pending dischargeability adversary proceeding or (b) substantial uncertainty of success in the proposed chapter 13 case provides a basis for disapproval of the proposed conversion.

For the reasons set forth below, the Court concludes that while there is a presumptive right to convert under section 706(a), that right is not absolute, and the matter remains within the discretion of the Court. The Court further concludes, however, that a motivation to sidestep dischargeability litigation is not, by itself, a basis for denial of the right to convert, nor is a probability of an eventual failure to confirm a plan once in chapter 13. In the absence, on the record here, of evidence of any other improper purpose or abuse, the Motion is accordingly granted.

### Discussion

Section 706(a) of the Code provides:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

That provision is implemented procedurally through Fed. R. Bankr.P. 1017(f). The rule provides, in relevant part:

Conversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013.

In that context, the Court considers the issues noted above in turn.

---

**1.** There is also another pending adversary proceeding, *Sukhram v. Krishnaya,* Case No. 01–8017, brought pursuant to Section 523(a), to determine dischargeability of a debt. The plaintiff in that action received notice of the instant motion to convert and has not taken a position with respect to the motion.

### (1) *Conversion as a Matter of Right?*

■ It is plain, from Rule 1017(f), that mere notice of conversion is insufficient, and that effecting conversion under section 706(a) requires a motion—suggesting, in turn, that the Court's role in the motion determination process is more than a meaningless one.[2] However, Rule 1017(f) is still an exercise of the rulemaking power, and cannot deprive parties of statutory rights. *See* 28 U.S.C. § 2075.[3] The authorities are considerably less than uniform as to whether the right to convert to chapter 13 is wholly absolute by statute.

The legislative history with respect to section 706(a), upon which the Debtor understandably relies, does indeed support the Debtor's position that the right to convert is absolute (at least where, as here, there has been no earlier conversion from chapter 11 or 13 to chapter 7). *See* H. Rept. No. 95–595, 95th Cong., 1st Sess., 380 (1977); S. Rept. No. 95–989, 95th Cong., 2nd Sess., 94 (1978).[4] However, a fair amount of the recent caselaw considering this issue, properly in this Court's view, has focused on the actual text of section 706(a)—by itself and by comparison to other sections of the Code—and the courts that have done so have almost wholly uniformly come to a contrary result.[5] Other cases, though analyzing the Code's statutory wording to a lesser degree, have come to a like conclusion.[6] There is other authority to the contrary.[7]

**2.** The Court feels that way even though Bankruptcy Rule 1017(f) provides that such a motion does not give rise to a contested matter governed by Bankruptcy Rule 9014. ("Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter, except under §§ 706(a), 1112(a), 1208(a) or (b), or 1307(a) or (b)").

**3.** That statute provides, in relevant part, with respect to the Supreme Court's power to enact rules for practice and procedure in bankruptcy cases, that "[s]uch rules shall not abridge, enlarge, or modify any substantive right."
See also *In re Spencer*, 137 B.R. 506, 513 (Bankr.N.D.Okla.1992) ("Where a bankruptcy rule does conflict with a statute, certainly such rule is invalid"); *In re Calder*, 973 F.2d 862, 867 (10th Cir.1992) ("We agree with [the debtor's] statement that the Bankruptcy Rules cannot override the absolute statutory right to convert pursuant to § 706(a)"). This Court notes, however, as the court noted in *In re Starkey*, 179 B.R. 687, 696 (Bankr.N.D.Okla. 1995), that while the Tenth Circuit used the phrase "absolute statutory right," "it was not called on to determine just how 'absolute' such right really was."

**4.** See S.Rep. No. 989, 95th Cong., 2d Sess. 94, U.S.Code Cong. & Admin. News 1978, 5787 at 5880, 6336 (1977):
Subsection (a) of this section gives the debtor the one-time *absolute right* of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.
(Emphasis added).

**5.** *See In re Marcakis*, 254 B.R. 77, 79–82 (Bankr.E.D.N.Y.2000) (Eisenberg, J.) (right to convert is not absolute, in context of request after chapter 7 discharge); *In re Hauswirth*, 242 B.R. 95, 96 n. 2 (Bankr.N.D.Ga.1999) (impliedly the same, in context of consideration of issue, on court's own motion, whether, after chapter 7 discharge and subsequent conversion to chapter 13, earlier chapter 7 discharge should be vacated); *Starkey, supra* at n. 3, 179 B.R. 687, 691–694 (Bankr. N.D.Okla.1995) (same, in context of allegations of debtor bad faith); *In re Lesniak*, 208 B.R. 902, 905 & n. 8 (same, in context of claims of debtor bad faith and earlier chapter 7 discharge), *but see In re (Virginia) Martin*, 880 F.2d 857 (5th Cir.1989) (debtor had absolute right to convert, even after a chapter 7 discharge, but also adding an arguably inconsistent observation—that courts refuse to interfere with right to convert "in the absence of extreme circumstances").

**6.** *See In re Pakuris*, 262 B.R. 330 at 333–335 (Bankr.E.D.Pa.2001) (holding right to convert is not absolute, and employing multi-factor test to determine whether conversion should

Particularly relevant, in this Court's view, is very recent authority in a sister district, which (significantly, for reasons apparent below) is, like this Court, bound by decisions of the Second Circuit. In *Marcakis, supra,* Judge Eisenberg of the Eastern District of New York analyzed the legislative history, the statutory language and the caselaw before concluding that a debtor's ability to convert remains permissive, and that a bankruptcy court can deny permission to convert where such is appropriate.

be permitted); *In re Kuntz,* 233 B.R. 580, 583 (1st Cir. BAP 1999) ("Cases interpreting the conversion rights under section 706(a) of the Code have consistently recognized the debtor's one-time right to conversion, which right may only be denied in 'extreme circumstances'"); *In re Dews,* 243 B.R. 337, 340 (Bankr.S.D.Ohio 1999) ("there is no absolute right to convert, and ... such requests are subject to significant judicial review"; in context of arguments that chapter 13 plan would be less advantageous for creditors); *Spencer, supra* at n. 3, 137 B.R. at 511–512, 513–514(Bankr.N.D.Okla.1992) (conversion permitted if case has not previously been converted *and* in the absence of extreme circumstances; emphasis by the court; in context of claims of debtor bad faith); *In re Tardiff,* 145 B.R. 357, 359–360 & n. 14 (Bankr.D. Me.1992) (in context of earlier chapter 7 discharge); *In re Jones,* 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990) (same); *cf. In re (Burma Jean) Martin,* 199 B.R. 175 (Bankr. E.D.Ark.1996), *aff'd,* 213 B.R. 571 (E.D.Ark. 1996), *aff'd mem.,* 116 F.3d 480 (8th Cir.1997) (debtor has absolute right to convert "only if she is otherwise eligible for Chapter 13," and debtor's bad faith would make her ineligible).

7. Other courts, whose statutory analysis is not, in this Court's view, as thorough and persuasive as the analysis in *Marcakis* and *Starkey,* and/or whose caselaw analysis is not as comprehensive as that of *Pakuris* (and which are outside the Second Circuit, where, as noted below, a contrary conclusion is required) have held that the court does not have the discretion to block the conversion. *See In re Young,* 237 F.3d 1168, 1173 (10th Cir.2001) (though saying "courts may disallow specific "chapter 20" conversions under the peculiar circumstances of a given case, and saying "most courts" are clear regarding the permissibility of such conversions"); *In re Finney,* 992 F.2d 43, 44–45 (4th Cir.1993) (but recognizing some circumstances might warrant invocation of Code section 105(a) to deny a section 706(a) motion); *In re Mosby,* 244 B.R. 79, 83–84 (Bankr.E.D.Va.2000) (recognizing

split in cases; in context of conversion request after chapter 7 discharge); *In re Verdi,* 241 B.R. 851, 854–855 (Bankr.E.D.Pa.1999) (in context of finding debtor acted in bad faith); *In re Porras,* 188 B.R. 375, 377–380 (Bankr.W.D.Tex.1995) (in context of apparent effort to sidestep Rule 2004 inquiry into debtor's affairs); *In re Jennings,* 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983) (in context of allegations debtor failed appropriately to disclose assets); *In re Street,* 55 B.R. 763, 765 (9th Cir. BAP 1985) (in context of effort to convert after judgment of nondischargeability); *In re Caldwell,* 67 B.R. 296, 300–301 (Bankr. E.D.Tenn.1986) (in context of allegations chapter 13 plan was not proposed in good faith); *In re Kleber,* 81 B.R. 726, 727 (Bankr. N.D.Ga.1987) (in context of pending dischargeability litigation); *In re Easley,* 72 B.R. 948, 951 (Bankr.M.D.Tenn.1987) (in context of objection to confirmation of chapter 13 plan, after adverse decision in chapter 7 nondischargeability litigation);

Another case, which does not itself decide whether the right to convert from chapter 7 to chapter 13 is absolute, notes that "[t]he case authority is divided on this issue." *In re Little,* 253 B.R. 427, 429 n. 3 (8th Cir. BAP 2000). The Eighth Circuit BAP cited the *Dews, Kuntz,* and *(Burma Jean ) Martin* cases in the above list, and, as a case said to be inconsistent with them, *In re Cavaliere,* 238 B.R. 247 (Bankr.W.D.N.Y.1999). However, *Cavaliere* in fact says that "[a]mong the rights accorded to a Chapter 7 debtor is a *nearly* absolute right to convert to Chapter 13." *Id.* at 248 (emphasis added). When that important qualification is taken into account, *Cavaliere* is fully consistent with the cases, cited above, holding that the right to convert is not wholly absolute, and reflects a view with which this Court concurs. Because it then discusses the exact ground for denial of the right to convert that has been argued here, *Cavaliere* is of considerable relevance on this motion, and is discussed at greater length below.

While recognizing that the legislative history had characterized the right to convert as "absolute," she noted that such an interpretation would be:

> very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion.

254 B.R. at 79.

More importantly, however, she noted that the relevant statutory language has remained an important starting point for determining the scope of 706(a), *id.* at 80, and that "the language remains the key...." *Id.* at 79. In that connection, she noted that while section 706(a) states that a debtor "may" convert his case, it does not state that the court "shall" honor that request. *Id.* at 81–82.

Her decision was driven, in meaningful part, by the Second Circuit's decision in *In re Barbieri*, 199 F.3d 616 (2d Cir.1999). There the Second Circuit reversed a district judge (who in turn had affirmed a bankruptcy judge) who had concluded that a bankruptcy court's equitable powers to avoid abuse trumped a statutory direction to the bankruptcy court to dismiss a case on a debtor's request under Code section 1307(b). In doing so, the Second Circuit reminded the lower courts of the importance of parsing statutory language—and of the significance of the statutory use of

the word "shall" and the significance of its absence. *See id.* at 619–620. Judge Eisenberg in *Marcakis* found the *Barbieri* analysis highly relevant to her construction of section 706(a), which, unlike section 1307(b), conspicuously lacks the word "shall." *See* 254 B.R. at 81. She noted the contrast between the use of "may convert" in Section 706(a) and the use of "shall dismiss" in Section 1307(b)—noting that Congress could demonstrate its ability to accord debtors an absolute right when it so intended. *Id.* (quoting *Hauswirth, supra,* 242 B.R. at 96 n. 2).

■ She also agreed, *see* 254 B.R. at 81, as does this Court, with the analysis in *Starkey, supra,* that the words "at any time" in section 706(a) refer to the stage in the progress of a case, and should not be interpreted to mean "regardless of the circumstances." [8]

Much of the caselaw, as noted above, is consistent with the *Marcakis* analysis. In *Burma Jean Martin; supra,* the bankruptcy court (thereafter affirmed by both the district court and the Eighth Circuit) noted that "[w]hile the debtor asserted that she has an absolute right to convert to Chapter 13 under section 706(a), this is true only if she is otherwise eligible for Chapter 13." 199 B.R. at 177. That court noted that the debtor had to meet all eligibility requirements for filing a Chapter 13 case, "including the requirement of

---

**8.** *Marcakis* involved a conversion request made after the debtor had received his discharge under chapter 7. The court's denial of conversion rested to a considerable extent on the ground that a discharge order had already been entered in the chapter 7 case. *See also In re Schwartz,* 178 B.R. 340, 344 (Bankr. E.D.N.Y.1995) (Hall, J.) (denying conversion from chapter 7 to chapter 13 where discharge had already been granted, noting, "[I]n those instances where a debtor's "absolute right" to convert has been exercised post-discharge, courts have looked beyond the absolute right to see what motivated the request."). At that stage in the case, the court explained, converting would constitute an abuse of process, since, with the discharge in place, there would be no debts to repay. *See Marcakis,* 254 B.R. at 83 (quoting *Lesniak, supra,* 208 B.R. at 905) ("[T]he 'absolute' right to convert hinges on debtors' opportunity to repay their debts. In order to have debts to repay, debts must exist."). Of course, that particular ground for denial of leave to convert is not applicable here.

good faith." *Id.* The *Burma Jean Martin* ruling, in this Court's view, was simply a variant of the approach employed in greater depth in *Marcakis* and *Starkey*— since, strictly speaking, good faith is not a statutory requirement for filing a petition under chapter 13; rather, it is a requirement for confirmation of a chapter 13 plan, see Code section 1325(a)(3), and the absence of good faith provides one of a number of bases for dismissal of a case under that chapter. *See, e.g., In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986) (debtors' bad faith resulted in not just denial of chapter 13 plan's confirmation, but dismissal of their chapter 13 petition); *In re Setzer,* 47 B.R. 340, 344 (Bankr.E.D.N.Y.1985) (Hall, J.) (dismissing chapter 13 case, under section 1307(c), for bad faith filing).

In *Virginia Martin, supra,* the Fifth Circuit characterized the Code as "unequivocal" in its statement of the right to convert, 880 F.2d at 858–859, and concluded that "a debtor's right to convert under section 706(a) is, as indicated by the statute and its legislative history, an absolute one." *Id.* at 859. However, the *Virginia Martin* court did not, in this Court's view, parse the statutory language as thoroughly as the courts in *Starkey* and *Marcakis.* For the reasons noted above, this Court cannot agree with *Virginia Martin,* insofar as that decision can be read to hold that the right to convert is absolute. Indeed, this Court is bound to disagree, because, like the *Marcakis* court in the Eastern District of New York, this Court is bound by the decisions of the Second Circuit, which focus on the presence, or absence, of the word "shall"—and its conspicuous absence from section 706(a).[9]

■ The relevant caselaw, and the appropriate way for bankruptcy courts to consider motions of this character, was summarized in the very recent decision by Judge Carey of the Eastern District of Pennsylvania in *Pakuris,* supra. He there stated:

> Although the courts are divided over whether § 706(a) gives a chapter 7 debtor an absolute right to convert, most courts will not allow a contested conversion without some examination of the facts. Indeed, many of the courts holding that a debtor has a one-time absolute right to convert have either (i) recognized that conversion may not be proper in situations involving "extreme circumstances" (thereby requiring some analysis of facts) or (ii) engaged in some type of equitable analysis of the facts, either through a discussion of whether the case should be converted and then re-converted to chapter 7 or whether the debtor can propose or has proposed a confirmable plan. We hold that a review of the facts of the particular case is appropriate when considering an objection to a § 706(a) motion.

262 B.R. 330 at 335 (footnotes omitted).

Some exercises of the Court's power to consider motions to convert will hardly be surprising. Thus the Court plainly has the right, on consideration of the motion required under Rule 1017(f), to determine whether the debtor's case has already been converted, under section 1112, 1208, or 1307, thereby disqualifying the debtor under section 706(a)'s express terms. Likewise, a court passing on a conversion motion has the right to determine whether

**9.** Significantly, perhaps, the *Virginia Martin* court acknowledged that there were cases that block the conversion, "but only in extreme circumstances," *id.* at 859 n. 2, and in another place stated that the courts refuse to interfere with the right to convert "in the absence of extreme circumstances," *id.* at 859, which were not alleged to be present there. *Id.* It is thus possible that the Fifth Circuit might be willing to find that extreme circumstances provide a basis for an exception; in any event, this Court so determines.

the debtor is eligible to be a debtor under chapter 13. *See* Sections 706(d)[10] and 109(e). This Court further concludes, however, on the authority of *Marcakis* and the other cases cited above, that a bankruptcy court may deny a motion under section 706(a) and Rule 1017(f) for other reasons as well, and that while the right to convert is presumptive and nearly absolute, a bankruptcy court, as the *Marcakis* court observed, still "must determine if the conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code." 254 B.R. at 82.

As noted above, the caselaw on this issue is not uniform. However, this Court is aware of no authority that has rejected or criticized the analysis set forth in *Marcakis* and *Starkey* since those decisions laid out their reasoning, and their analysis will be followed here.

### (2) *Bases for Denial of Leave to Convert*

Having concluded that a bankruptcy court has the power to deny conversion to chapter 13 in an appropriate case, the issue then before the Court is whether to exercise that power for either of the two grounds advanced by creditor Seebaran— the motivation to sidestep the pending dischargeability litigation (or, stating it more

antiseptically, to discharge debts that would not be dischargeable under chapter 7), or by reason of a dim likelihood of confirming a plan in chapter 13.[11]

While the caselaw cited above leads this Court to conclude that it has the power to deny conversion, that power, in the Court's view, should be exercised sparingly. Harmonizing the language of the Code with the legislative history quoted above (and caselaw like *Virginia Martin*) requires that, while the Court should have the power to ensure qualification for chapter 13 and have the power to protect its jurisdiction from abuse,[12] it should regard the right to convert from chapter 7 to chapter 13 as presumptive, and should deny the right to convert only for lack of statutory qualification or extreme circumstances.[13]

Measured against that standard, neither of the grounds advanced by creditor Seebaran, at least under the facts presented here, presents the extreme circumstances this Court believes it would have to find in order to deny conversion. Helpful with respect to the first ground is *Cavaliere, supra.* In *Cavaliere*, as in this case, a creditor (there a bank, holding credit card debt) had brought an adversary proceeding against the debtor, asserting certain

---

**10.** That section provides:

Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

**11.** In the future, the Court would encourage litigants to address all of the factors considered by the court in *Pakuris*, which, while informed in part by Third Circuit law, nevertheless provides, in any judicial circuit, a useful framework for consideration of motions of this character. In our case, other factors considered in *Pakuris* do not appear to be present to any material degree, and in any event have not been argued to be applicable here.

**12.** In this connection, the Court agrees that "all courts possess inherent power to protect their jurisdiction and process from abuse," *In re Spencer, supra*, 137 B.R. at 511, and that such powers need not be specified in every statutory section, *id.*, but finds that a narrow "extreme circumstances" limitation provides a sufficient basis for invoking this inherent power.

**13.** One such extreme circumstance, as many courts have held, is that the debtor already has obtained a discharge in chapter 7. That ground has not been asserted here.

debts were nondischargeable. Rather than answer the complaint, however, the debtor converted her chapter 7 case to one under chapter 13, and the creditor complained of alleged abuse. While the procedural context for the *Cavaliere* dispute was quite different,[14] observations of the *Cavaliere* court with respect to conversion from chapter 7 to chapter 13 to avoid dischargeability litigation are nevertheless relevant. The *Cavaliere* court started with the observation that among the rights accorded to a Chapter 7 debtor was a "nearly absolute" right to convert to Chapter 13. 238 B.R. at 249. Citing *In re Street, supra,* a case that had found that conversion from Chapter 7 to 13 was not manipulative even after a judgment of nondischargeability had been entered, the *Cavaliere* court found debtor Cavaliere's situation, *before* an adjudication of nondischargeability, to present an easier case. The *Cavaliere* court held that conversion to chapter 13 to avoid the costs of litigating the dischargeability of a debt under chapter 7 was a proper use of chapter 13, and by itself would not preclude confirmation of a plan. *See* 238 B.R. at 249.[15] Enjoying an enhanced discharge, the *Cavaliere* court found, is a benefit "attributable . . . not to some exercise of bad faith, but to the conversion rights that section 706(a) expressly grants to anyone who originally sought relief under Chapter 7." *Id.*

Creditor Seebaran cites two cases in support of the objection to conversion, both of which follow the reasoning of cases like *Marcakis*, though in each of those cases the court ultimately concluded that conversion was appropriate under the facts. *See In re Kuntz, supra; In re Dews, supra.* In *Kuntz*, although the court recognized an exception to the debtor's absolute right to conversion in cases of "extreme circumstances" constituting bad faith, the court ultimately found that the circumstances did not rise to the level of egregiousness sufficient to deny the debtor's request. 233 B.R. at 585. Similarly, the *Dews* court considered the debtors' motivation in converting to chapter 13, and concluded that the debtors were honestly attempting to repay their creditors, while retaining ownership of their house, and therefore should be given a fair chance to financially rehabilitate themselves. 243 B.R. at 340. While each of *Dews* and *Kuntz* supports creditor Seebaran's position that there are exceptions to the generally absolute right to convert, neither addresses the point that the *Cavaliere* court made—that attempting to avail oneself of the broader discharge provisions available under chapter 13 is not wrongful, and is not an abuse creating the exceptional circumstances that must be found to warrant an exception to the nearly absolute right to convert.

Creditor Seebaran's second point is that the Debtor's chances for success in chapter 13 are slight, and that this Court, in the interests of economy, should deny leave to convert now to avoid unnecessary expense. This Court recognizes that Seebaran's assertions with respect to the Debtor's po-

---

14. *Cavaliere* involved an objection to confirmation of a chapter 13 plan—where good faith regarding the plan proposal is a requirement under Section 1325(a)(3); here, of course, we are faced with the motion to convert (which apparently was not contested in *Cavaliere* ), which does not necessarily raise the same issues.

15. It distinguished cases involving the filing of a chapter 13 case after the debtor had already secured a discharge under chapter 7. "Such instances are distinguishable, in that they can potentially represent an effort to derive conjunctively the benefits of both Chapter 13 and Chapter 7, and thereby to avoid the full impact of the burdens attributable to each of these respective chapters." *Id.* at 249.

tential inability to confirm a Chapter 13 plan are nonfrivolous, and may have ultimate merit, but this Court considers it inappropriate to trump the Code's statutorily created right to convert for the reason of desired judicial economy. In this Court's view, consideration of issues governed by Section 1325 of the Code is premature, and more appropriately postponed for determination by the chapter 13 Court once the case is in chapter 13, and/or a plan under chapter 13 has been proposed. Concerns as to success in this regard do not rise to the level of the exceptional circumstances required to deny a motion to convert.[16]

While this decision will permit the Debtor to proceed in chapter 13, any and all decisions with respect to what is appropriate after that will be in the discretion of the Chapter 13 Judge. This opinion should not be deemed to be tying the hands of the Chapter 13 Judge in any such further proceedings—including, without limitation, any decisions as to whether confirmation is appropriate under Section 1325. This decision is without prejudice to the rights of creditor Seebaran in that regard.

SO ORDERED.

**16.** The Court so holds notwithstanding language in *Dews* that provides Creditor Seebaran with support in this regard. *Dews* states, among other things, that before permitting a conversion under section 706(a):

[C]ourts should make a preliminary inquiry as to the quality of any proposed chapter 13 plan, and whether it would meet confirmation requirements. It is this Court's view that it is a waste of the parties' and court's resources to simply convert cases to chapter 13 where there is a high likelihood that the plans cannot be confirmed.

243 B.R. at 340. However, it is difficult at best to reconcile that inquiry process with the many cases holding, collectively, either that the right to convert is absolute or that denial of the right to convert should be limited to the most extreme circumstances. Thus the Court considers it inappropriate to engage in such a process here. Particularly with the input of the Chapter 13 Trustee, the chapter 13 court will be in a materially better position to make decisions in this regard, and this Court believes that any incremental savings in time and effort should not trump a debtor's presumptive right to convert to chapter 13.