**In re Matthew P. VERDI, Debtor.**

**Bankruptcy No. 99–19425DAS.**

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Dec. 10, 1999.

Ronald Beifeld, Plymouth Meeting, PA, for Debtor.

Lawrence J. Lichtenstein, Haddonfield, NJ, Former Chapter 7 Trustee.

Danielle Tribuiani, Obermayer Rebmann Maxwell & Hippel, Philadelphia, PA, for Former Chapter 7 Trustee.

David B. Aaronson, Mesirov Gelman Jaffe, Cramer & Jamieson, LLP, Philadelphia, PA, for the Walheim Group.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, United States Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

This is an Opinion about the "good faith filing requirement" ("the GFFR") and how it relates to a debtor's desire to convert a Chapter 7 case to a Chapter 13 case. While precedent requires us to recognize the existence of a GFFR in Chapter 13 cases, it is not totally clear what the consequences of a finding of "bad faith" should be.

Here, we find "bad faith" on the Debtor, but we will nevertheless allow him an opportunity to utilize Chapter 13 in a manner which does not unfairly prejudice any other interested party. However, if unsuccessful in confirming a Chapter 13 plan, we will require liquidation of all of his assets which were or became property of his estate as of the date that this case was originally filed under Chapter 7.

### B. PROCEDURAL AND FACTUAL HISTORY

MATTHEW P. VERDI ("the Debtor"), although married, filed this bankruptcy case as an individual case under Chapter 7 of the Bankruptcy Code on July 23, 1999. The original Schedules listed two parcels of real estate, jointly owned with his non-debtor wife, Theresa Verdi ("the Wife"), a Pennsylvania residence valued at $135,000 and a New Jersey vacation home ("the NJ Realty") valued at $190,000. Both were listed as free and clear of liens but were claimed as exempt under Pennsylvania state law as entireties property not subject to joint debts.

Personalty listed by the Debtor included a 1996 Pontiac automobile valued at $6,000 and subject to a secured creditor's lien of $5,000; a $2500 checking account; an IRA which was declared not to be property of the Debtor's estate but was valued at $70,000; and stock valued at $5600. The bank account and stock were declared exempt as entireties property not subject to joint debts and the IRA was designated as not property of the estate.

Other than the secured car loan, only one creditor was listed: the Walheim Group ("Walheim"), a tax accounting firm which was the Debtor's long-time former employer, at "$50,000+." At the hearing, we learned that this claim arises from Walheim's contention that the Debtor, when he became "semi-retired," improperly took, serviced, and received compensation from certain of Walheim's clients.

The meeting of creditors was scheduled before interim trustee Lawrence J. Lichtenstein, Esquire ("the Trustee"), on August 25, 1999, and the bar date for objecting to the Debtor's discharge or discharge of any of his debts was fixed as October 25, 1999. The meeting of creditors was commenced on August 25, 1999, but was subsequently continued to later dates by the Trustee and was never completed while the case remained in Chapter 7.

On September 15, 1999, the Trustee filed an objection ("the Objection") to the Debtor's claim that his interest in the NJ Realty was exempt. On October 4 and 5, 1999, Walheim filed motions to compel production of documents from the Debtor and examine the Wife concerning the Debtor's personalty. The Objection was granted on October 21, 1999, on the ground that, under New Jersey law, which controlled as to the NJ Realty, the Debtor's interest was not beyond the Trustee's reach. *See In re Kaplan,* 162 B.R. 684, 698 (Bankr.E.D.Pa. 1993), *aff'd sub nom. Kaplan v. First Options of Chicago, Inc.,* 189 B.R. 882 (E.D.Pa.1995), *reconsideration denied,* 198 B.R. 91 (E.D.Pa.1996), citing *In re Youmans,* 117 B.R. 113 (Bankr.D.N.J.1990). Walheim's aforementioned motions were granted on October 13, 1999.

Also on October 13, 1999, the Trustee filed a motion seeking the turnover to him of initially-undisclosed joint Treasury Notes in the amount of $140,000, part of which the Debtor was alleged to have converted into joint certificates of deposit, and an adversary complaint to enjoin any future transfers of this property. Next, on October 14, 1999, Walheim filed a motion to compel compliance with the orders granting its earlier motions. And finally, on October 25, 1999, Walheim filed an adversary proceeding objecting to the Debtor's discharge.

In response to these filings, the Debtor initially, on October 19, 1999, filed a motion to voluntarily dismiss this case ("the MTD"). Prior to the scheduled hearing of November 9, 1999, on the MTD, the Debtor, on October 22, 1999, filed a "praecipe" to convert this case to Chapter 13. We also scheduled the Debtor's conversion request for a hearing on November 9, 1999.

After a colloquy with counsel on November 9, 1999, we entered an order converting this case to Chapter 13. In so ordering, we acknowledged, but declined to follow, the reasoning of cases where motions of Chapter 7 debtors to convert their cases to Chapter 13 cases were denied on grounds that debtors were acting in "bad faith" in seeking the conversions. *See Martin v. Cox,* 213 B.R. 571 (E.D.Ark. 1996), *aff'd,* 116 F.3d 480 (8th Cir.1997) (pro se debtor found "conniving, distrustful and not truthful" in preparing Schedules); *In re Snell,* 227 B.R. 127 (Bankr. S.D.Ohio 1998) (debtor found to be over Chapter 13 debt limit); *In re Sully,* 223 B.R. 582 (Bankr.M.D.Fla.1998) (debtor tried to conceal personal injury suit); *In re Lesniak,* 208 B.R. 902 (Bankr.N.D.Ill. 1997) (debtors understated values of vehicles and bank account balances); *In re Thornton,* 203 B.R. 648 (Bankr.S.D.Ohio 1996) (debtors attempted to conceal assets, lied to the trustee about them, and overvalued assets in seeking prepetition loans); and *In re Jeffrey,* 176 B.R. 4 (Bankr.D.Mass.1994) (debtors failed to disclose all assets). *But see In re Kuntz,* 233 B.R. 580, 582–84 (1st Cir. BAP 1999) (holding that a denial of such a request was confined to "extreme cases"); and *In re Cavaliere,* 238 B.R. 247, 249 (Bankr. W.D.N.Y.1999) (converting to Chapter 13 after a creditor challenged dischargeability of a debt in Chapter 7 held permissible). *Cf. Clearstory & Co. v. Blevins,* 225 B.R. 591 (D.Md.1998); and *In re Patton,* 209 B.R. 98 (Bankr.E.D.Tenn.1997) (Chapter 13 debtor's right to voluntary dismissal is absolute, in light of language of 11 U.S.C. § 1307(a) almost identical to § 206(a)). *But cf. In re Barbieri,* 226 B.R. 531 (E.D.N.Y.1998) (debtor's fraud and bad faith arising from his attempts to sell certain property justified a conversion of the case to Chapter 7 rather than a requested dismissal); *In re Jones,* 231 B.R. 110 (Bankr.N.D.Ga.1999) (case converted to Chapter 7 rather than voluntarily dismissed because the debtor was found to have filed his case solely to avoid an unfavorable result in a support action); *In re Johnson,* 228 B.R. 663 (Bankr.N.D.Ill. 1999) (conversion to Chapter 7 was directed because the debtor failed to disclose a pending personal injury action); and *In re Smart,* 212 B.R. 419 (Bankr.S.D.Ga.1997)

(court dismissed the case with prejudice because of the debtor's failure to attend the meeting of creditors despite the pendency of the debtor's request for a voluntary dismissal).

We held that, despite the foregoing authorities, the language of 11 U.S.C. § 706(a), stating that the debtor may convert a Chapter 7 case to Chapter 13 "at any time" and that "[a]ny waiver of the right to convert a case under this section is unenforceable," allowed of no exceptions in permitting conversion. We therefore held that the proper approach, under these circumstances, was to allow the conversion from Chapter 7 to Chapter 13 and to require the parties opposing same, here Walheim and the Trustee, to seek an involuntary reconversion to Chapter 7 after this case was converted to Chapter 13.

In our conversion order, we expressly provided that, if the Trustee filed a motion to reconvert this case to Chapter 7 by November 12, 1999, we would schedule an expedited hearing on such a motion on November 16, 1999. Thus, when the Trustee filed the instant Motion on November 12, 1999, it was heard on November 16, 1999, with all interested parties being granted an opportunity to render post-hearing submissions to us by December 3, 1999.

The only witness at the two-hour hearing of November 16, 1999, was the Debtor. It was established therein that, in response to the facts pried out of him by Walheim and the Trustee, he had filed but one amendment to his Schedules, an Amended Schedule B on September 10, 1999, in which he had also listed $7500 in certificates of deposit and the $140,000.00 Treasury Notes.

However, by way of the Debtor's admissions made in the meeting of creditors, examinations by Walheim, and the November 16, 1999, hearing, it was established the Debtor had either failed to disclose or materially undervalued assets in the aggregate amount which possibly exceeded $200,000 as follows: (1) his checking account balance was understated by $9,300.90 as of the filing date and, as of the date that he filed the Amended Schedule B, it was understated by $52,129.74; (2) as many as fifteen (15) certificates of deposit owned by him and his Wife, totaling in excess at $120,000, were not listed on even the Amended Schedule B; and (3) a receivable from his son, Thomas Verdi, in the amount of $56,875.76 was similarly not listed on the Amended Schedule B.

The Debtor's testimony reflected considerable hostility towards Walheim and the Trustee for uncovering his undisclosed assets and not an ounce of remorse. He constantly stated, unconvincingly, that he had unintentionally simply overlooked the presence of the omitted assets. His statement, at one point, that he and the Wife worked hard for their money and didn't intend to let the Trustee or anyone else get it appears to reflect an honest statement of the Debtor's to reasons for his actions. However, it is an understatement to note that these sentiments are not a justification or a defense to his illegal acts, which could subject him to criminal as well as civil liability. Nevertheless, we are of the sense that, through the vigor of Walheim, the Trustee, and their respective counsel, all or nearly all of the Debtor's assets have now been brought to light.

The Debtor's Chapter 13 plan, filed October 22, 1999, contemplates payments of $150 monthly for just twelve (12) months. However, the Debtor's counsel acknowledged that the success of a plan hinged on the Debtor's ability to pay in full the allowed claim of Walheim or allow his non-exempt property to be sold in furtherance thereof. See In re Choice, 1997 WL 599577, at *5 (Bankr.E.D.Pa. Sept. 23, 1997) (a plan to pay off a single, large unsecured creditor with non-exempt assets over the duration of the plan was deemed confirmable). The amount of Walheim's claim, according to Walheim, is about $300,000. According to the Debtor, it is zero. The only other claims appear to be

the administrative claims of the Chapter 13 Trustee and the instant former Chapter 7 Trustee. *See* 11 U.S.C. § 348(f) (all property as of date of conversion remains property of the estate if a debtor converts a case to Chapter 13 in bad faith); and *In re Colburn*, 231 B.R. 778, 781–84 (Bankr. D.Or.1999) (former Chapter 7 Trustee not limited by 11 U.S.C. § 326(a) in making administrative claims against a Chapter 13 estate after a conversion).

In addition to challenging the Trustee's standing to prosecute the Motion, the Debtor argues that Chapter 13 is an adequate means of remedying any past abuses on his part. Walheim (and the Trustee, insofar as he is entitled to compensation for his services thus far) apparently agree that the Chapter 13 process will yield the same proceeds as would a Chapter 7 liquidation, but they contend that the Chapter 7 process is quicker. The Debtor's counsel responded to this contention by pointing out that the plan, as confirmed, could (and perhaps will have to, in the face of objection to any alternative) provide for a liquidation of non-exempt property as swift as a Chapter 7 liquidation.

### C. DISCUSSION

We have repeatedly resisted the principle that there is a GFFR under any Bankruptcy Code Chapter. *See In re Landes*, 195 B.R. 855, 859–65 (Bankr.E.D.Pa.1996) (Chapter 7); *In re Lilley*, 181 B.R. 809, 811 (Bankr.E.D.Pa.) (*"Lilley I"*), *rev'd,* 185 B.R. 489 (E.D.Pa.1995), *rev'd,* 91 F.3d 491, 496 (3d Cir.1996) (*"Lilley II"*), *on remand,* 201 B.R. 725 (Bankr.E.D.Pa.1996) (*"Lilley III"*) (Chapter 13); and *In re 1606 New Hampshire Ave. Associates*, 85 B.R. 298, 308 (Bankr.E.D.Pa.1988); *In re Smith*, 77 B.R. 496, 500–01 (Bankr.E.D.Pa. 1987) (Chapter 11). Our reasons for taking this position are basically as follows: (1) there is no such requirement in the Code, making it impossible to ascertain statutory standards for applying same; (2) consequently, application of the requirement involves consideration of issues not only not expressed in the Code, but usually appealing to subjective moral and ethical issues which are in conflict with the principles of the Code; (3) these ethical and moral issues, such as ascertainment of a debtor's motivations for actions, are difficult if not impossible to accurately determine; and (4) application of the GFFR tends to encourage decisions prohibiting a debtor's wishes as punishment for perceived improper actions, as opposed to determining whether the debtor's course of conduct will really harm other interested parties.

Since this case is now in Chapter 13, it is subject to a GFFR of some sort, per *Lilley II*. More specifically, the *Lilley II* court stated, at 91 F.3d at 496 & n. 2, that

> the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. *In re Love*, 957 at 1355; *In re Gier*, 986 F.2d at 1329; *In re Eisen*, 14 F.3d at 470. Factors relevant to the totality of the circumstances inquiry may include, among others, the following:
>
>> "the nature of the debt...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."
>
> *In re Love*, 957 F.2d at 1357.[2] ...

2. In light of *In re Gathright*, 67 B.R. 384, 390 (Bankr.E.D.Pa.1986), we expressly reject one of the factors identified by the Seventh Circuit in *In re Love*: the question of whether the debt would be non-dischargeable in a Chapter 7 proceeding.

In *Lilley III*, 201 B.R. at 728–29, we stated that,

> [i]n attempting to get our hands on the true nature of the good faith filing requirement, assuming, as we must, that

we are compelled to do so, we will direct our attention to the classic, general definitions of "good faith" and "bad faith." In *Gathright, supra,* 67 B.R. at 387–88, we quoted both Collier and BLACK'S LAW DICTIONARY for definitions of "good faith," finding that the polestar of this concept is honesty, absence of fraud or design, the absence of intentional nondisclosures of material facts, and the like. Perhaps even more instructive is the definition in BLACK'S LAW DICTIONARY 127 (5th ed.1979), of "Bad faith," which reads as follows:

> "The opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose of moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."

We ultimately held, *id.* at 729, that

> [t]he statement that a bankruptcy court should consider the "totality of the circumstances," which "may include" other considerations, can be best read as simply giving the bankruptcy court more room to make its assessment. . . .

of what should take place in a Chapter 13 case. We therefore made the *Lilley* debtor extend his plan for five years and required that he allow the creditor at issue, the Internal Revenue Service, to pursue his wife for any applicable remedies against her. *Id.* at 729–30.

■ We find the Debtor here to be stubborn, uncooperative, *and* to have acted in bad faith even within the confines of our rather narrow *Lilley III* definition. In that sense, he is like the *Landes* debtor, whose Chapter 7 discharge was denied due to his stubborn refusal to abide by our orders. *See In re Landes,* 201 B.R. 399 (Bankr.E.D.Pa.1996).

■ However, we do not see how an immediate re-conversion of the instant case to Chapter 7 will benefit either of the two interested parties here any more than will our ultimate order herein. We note that, in contrast to *Landes,* dismissal for "bad faith" is not sought by the parties opposing the debtor's efforts. A worse fate than dismissal is denial of a debtor's discharge plus liquidation of all non-exempt assets. *See In re Schachter,* 214 B.R. 767 (Bankr.E.D.Pa.1997), as noted in *In re Kasal,* 217 B.R. 727, 739 (Bankr. E.D.Pa.), *aff'd sub. nom. Casey v. Kasal,* 223 B.R. 879 (E.D.Pa.1998).

■ A Chapter 13 liquidation, where, by application of 11 U.S.C. § 1325(a)(4), the debtor must distribute all non-exempt assets up to the amount of the claim, is not much different than a Chapter 7 liquidation. To be sure, the Chapter 13 debtor has more flexibility concerning the timing of payments. However, where a debtor has acted in bad faith, as been the instant Debtor, a court may be very demanding about the contents of a confirmable Chapter 13 plan, in light of 11 U.S.C. §§ 1325(a)(1) and (a)(3), as well as § 1325(a)(4).

■ Our within order is molded to provide certain restrictions on the Debtor's actions. The dictates of the order assume that the threshold issue of determining debt-limit eligibility and the fixing of Walheim's claim will come quickly. Recently, we had occasion to discuss the resolution of a debt-limit issue in *In re Berenato,* 226 B.R. 819 (Bankr.E.D.Pa.1998). In that case we held that the issue of eligibility could be made before the objection to the claim was decided, as long as the amount of the claim, though disputed, was able to be fixed at a sum certain by the claimant. *Id.* at 822. In so holding, we acknowledged that, in an earlier decision, *In re*

*Gordon,* 127 B.R. 574, 578 n. 2 (Bankr. E.D.Pa.1991), we had suggested that it was only "fair" that, if the debtor had a "bona fide dispute" with a claim, the determination of the validity of the claim should precede the § 109(e) eligibility determination. In *Berenato,* we "receded" from the holding that requiring the claim objection to be heard before the eligibility determination was made was the norm, stating instead that only "in certain circumstances" should it be necessary to have the claim determination first. 226 B.R. at 823. Thus, the federal tax claim of $461,647.08 at issue in *Berenato,* listed by the Debtor as an unsecured though disputed claim of $338,000, was held to support dismissal after our hearing the claim objection, without first deciding the objection.

However, after further consideration of the nature of the debt limitation as less than easily justifiable on a theoretical basis, we are not certain that our decision to tighten our prior interpretation of § 109(e) in *Gordon* in deciding the *Berenato* case was well-advised. In any event, the claim of Walheim has not been established as fixed at any specific amount, like the claim at issue in *Berenato.* We will therefore begin by having a hearing on this issue on January 5, 2000.

Assuming that the Debtor clears the debt limitation hurdle, we will require him to promptly prepare a confirmable plan. In so doing, the Walheim claim and the Trustee's valid administrative claim must be paid with all of the Debtor's available non-exempt assets, including the NJ Realty. Because of our finding of bad faith in the Debtor's actions in this case, and our uncertainty that he has not improperly converted property of the estate to his own use before and after the filing, we will revise the normally controlling principles of 11 U.S.C. § 348(f) and provide that all property of the Debtor's estate as of July 23, 1999, shall so remain if the case fails to remain in Chapter 13.

We also will expressly require that the allowed fees of the Trustee and his counsel

be paid as administrative claims in the Debtor's Chapter 13 plan. In this way, the Trustee and his counsel will be made whole and cannot complain about lack of compensation for the work to which the Debtor unreasonably subjected them.

Finally, if the Debtor cannot meet the debt limit or is unable to achieve confirmation of a plan promptly, this case will be reconverted to Chapter 7 forthwith. We also note that, in the confirmation process, the Debtor must overcome objections that his plan fails to satisfy 11 U.S.C. §§ 1325(a)(1), (a)(3), or (a)(4). A prompt sale of the NJ Realty may be deemed a necessary component of a confirmable plan under these Code sections.

It is our belief that this order thoroughly protects the interests of both Walheim and the Trustee. We also believe that this order overcomes their objections to this case's remaining in Chapter 13.

■■■ We will briefly address several issues raised by the parties relative to the Motion in light in their post-hearing submissions. The Debtor argues that the Trustee lacks standing to prosecute the Motion because he has not filed a claim and is therefore not a "party in interest." We cannot agree. The Trustee is an administrative claimant who need not file a proof of claim to have a claim against the Debtor's estate. *See* 8 COLLIER ON BANKRUPTCY, ¶ 1300.72[1], at 1300–143 (15TH ed. rev.1999); and 9 COLLIER, *supra,* ¶ 3002.03[1], at 3002–9. Further, since this case was just recently converted, no bar date has been set by which claims must be filed. Surely the Trustee will file a claim. Furthermore, the term "party in interest" is broader than a "creditor" and would certainly appear to include the Trustee. *See In re Crescent Mfg. Co.,* 122 B.R. 979, 981, (Bankr.N.D.Ohio 1990); 7 COLLIER, *supra,* ¶ 1109.02[1], at 1109–8 to 1109–10. Finally, Walheim, which is a creditor and supports the Motion, is clearly a "party in interest." If the Trustee was precluded from presenting the Motion

in his own behalf, Walheim could surely join or refile the Motion in its name.

 In any event, we are rarely receptive to defenses based on lack of standing. *See In re Nicolet, Inc.,* 80 B.R. 733 (Bankr.E.D.Pa.1987); and *In re Morrison,* 69 B.R. 586, 589 (Bankr.E.D.Pa. 1987). If a party believes itself affected by some event enough to take the trouble to raise it as an issue, it can usually be assumed that that party has a sufficient interest in the issue to be held to have standing to assert it. "[W]e are very reluctant to allow standing to become a means to avoid deciding difficult substantive issues put before us." *Id.*

The Trustee argues that the Debtor's present plan, offering $150 monthly payments, promised to provide a very slow payment process. However, a plan which is confirmable and is finally confirmed may look quite different than the Debtor's present plan. The Trustee also notes his experience with the facts which he claims would facilitate the administration of this case by him as opposed to the Chapter 13 trustee. However, most of the relevant facts were adduced through Walheim's efforts. Walheim is likely to retain an active role in the case, whether it is administered in Chapter 13 or in Chapter 7.

 Most of Walheim's submission argues, as does the Trustee to a more limited degree, that the Debtor's breach of the GFFR should impose a punishment upon the Debtor by precluding him from proceeding as he likes. As we noted, however, the concept of punishment of a bad faith debtor for its own sake makes little sense. That is the purpose of the criminal law, not the Bankruptcy Code. The instant order is, we submit, likely to bring about a better result for Walheim then its sought-for immediate conversion of the case to Chapter 7. The Trustee's argument that the Debtor is over the debt limit will be promptly tested. If the Debtor passes this test, he will emerge as a candidate for legitimate Chapter 13 rehabilitation.

### D. CONCLUSION

For all of the reasons set forth here, the following order will be entered.

### ORDER

AND NOW, this 10th day of December, 1999, after a hearing of November 16, 1999, on the motion of Lawrence J. Lichtenstein, Esquire, the former Chapter 7 Trustee ("the Trustee") to Convert the Debtor's Chapter 13 Case to a Case Under Chapter 7 ("the Motion"), and upon consideration of the post-hearing submissions of the parties relevant thereto, it is hereby ORDERED as follows:

1. The Motion will not be granted at this time but will be kept in abeyance, at least until the status hearing scheduled below.

2. The Debtor is DIRECTED to do the following to retain this case in Chapter 13:

a. File and serve all necessary Chapter 13 Schedules and Statements and any objection ("the Objection") to the claim (or anticipated claim) of the Walheim Group ("Walheim") on or before December 17, 1999, and list the Objection for an expedited hearing on the date of the status hearing on the Motion and to determine whether the Debtor is eligible to proceed under Chapter 13 under the applicable debt limitation of 11 U.S.C. § 109(e), which is scheduled on

WEDNESDAY, JANUARY 5, 2000, AT 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.

b. Achieve confirmation of a Chapter 13 plan within 60 days from the first listing of the confirmation hearing.

3. The Chapter 13 Trustee or the Clerk shall forthwith dispatch the notice scheduling the meeting of creditors and

confirmation hearing and setting the bar date for filing claims in this case.

4. The Trustee and his counsel are deemed entitled to an administrative claim in the Debtor's Chapter 13 case, to be allowed upon fee applications filed at least 30 days prior to the date on which confirmation is first scheduled.

5. If the Debtor does not satisfy the requirements of paragraph 2 of this Order, or any other requirements imposed hereafter, this case will be converted to a Chapter 7 case in which the property of the estate will consist of property of the estate as of the date of the original filing of this case on July 23, 1999, and this case will be so administered by the Trustee unless he moves to dismiss it.