**In re Linda CARROW, Debtor.**

No. 02–17838.

United States Bankruptcy Court, N.D. New York.

Sept. 8, 2004.

Darrell L. Bowen, Plattsburgh, NY, for Debtor.

Eggleston & Cramer, Ltd., Douglas J. Wolinsky, Chapter 7 Trustee, Burlington, VT, for Trustee.

Matthew Sgambettera, Clifton Park, NY, Robert Garrasi, Niskayuna, NY, Amicus for USR Group.

Ronald J. Kim, Saratoga Springs, NY, Amicus for Denise Dwyer.

Harris, Balzer & Conway, PLLC, Gregory G. Harris, Albany, NY, Amicus Chapter 7 Trustee.

Ehrlich, Hanft, Baird & Arcodia, Marc S. Ehrlich, Troy, NY, Amicus Chapter 7 Trustee.

Goldberg & Gottheim, Nathan M. Goldberg, Albany, NY, Amicus Chapter 7 Trustee.

## MEMORANDUM–DECISION

ROBERT E. LITTLEFIELD, JR., Bankruptcy Judge.

Before the court is a motion filed by Linda L. Carrow (the "Debtor") to convert her bankruptcy case from chapter 7 to chapter 13 under the United States Bankruptcy Code (11 U.S.C. §§ 101—1330) [1] pursuant to § 706(a). The Chapter 7 Trustee, Douglas J. Wolinsky (the "Trustee"), has filed opposition to the motion.

## JURISDICTION

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b).

## FACTS

The facts relevant to this motion are undisputed and are as follows. The Debtor filed a petition for chapter 7 bankruptcy relief on December 11, 2002 (the "Petition"). On Schedule A of the Petition, the Debtor lists three parcels of real property, to wit: her residence, owned jointly with

---

1. Unless otherwise indicated, all section references contained herein relate to the United States Bankruptcy Code.

her daughter, located in Onchiota, New York (the "Residence"), and two unencumbered parcels of vacant land located in Saranac, New York (the "Land"). The Debtor lists a value of $27,500 for the Residence, but indicates that it is subject to a mortgage lien in the amount of $17,500. She lists the Land value as $13,800. On Schedule C, the Debtor claims a homestead exemption for the Residence, but does not claim any exemption for the Land. In Schedules I and J, the Debtor respectively lists net monthly income of $1,883.14 and total monthly expenses of $2,342.96.

On April 18, 2003, the Debtor received her discharge. The Trustee continued to administer the estate and on May 27, 2003, filed an application to employ a real estate broker, which was granted by written order on July 21, 2003. The next day, the Trustee filed a motion to sell the Land pursuant to § 363(b)(1). In response, on August 4, 2003, the Debtor filed an objection to the Trustee's sale motion and a separate motion to convert her case from chapter 7 to chapter 13. The Debtor's accompanying notice of motion scheduled a related hearing on the court's regular motion calendar on September 11, 2003. On September 8, 2003, the Trustee objected to the Debtor's conversion motion. The parties submitted memoranda of law and on January 8, 2004, after numerous hearings and conferences, the court indicated it would treat the motion as a submitted matter without the need for an evidentiary hearing. Because this was a case of first impression in this court, several amicus briefs and affirmations have also been submitted. Following the last amicus filing on May 14, 2004, the matter is now ripe for decision.

## ARGUMENTS

The Debtor asserts that the language of § 706 is, "on its face, apparently clear and unambiguous," Debtor's Mem. at 2, yet the Debtor acknowledges that a number of courts have diminished, conditioned, or modified the right to convert. In recognition of the divergent case law on the issue, the Debtor labels the right to convert as "nearly absolute," *Id.* at 5, and suggests that even if the court were to consider the equities of the case, the circumstances mitigate in favor of permitting the Debtor to convert to chapter 13. The Debtor admits that she and her attorney chose chapter 7 relief with the expectation that the Trustee would abandon the Land on the ground that it would provide inconsequential value to the estate. The Debtor and her counsel based their expectation of abandonment on the Land's low market value and location in an area "subject to rigorous land use development and zoning scrutiny." *Id.* at 10. However, the Debtor denies that she entered the bankruptcy system in bad faith. As proof that she has declared bankruptcy with clean hands and that she does not seek to "leverage" her creditors, the Debtor asks the court to consider her willingness to relinquish all rights and entitlements of her chapter 7 discharge in exchange for the granting of her motion, thereby allowing her to retain the Land which she inherited. Additionally, the Debtor asserts that more money will go to creditors if she converts, and that she will be able to fund a chapter 13 plan because of an "oversight" in her income at the time of filing in the approximate amount of $1,000 per month, and a commitment from her adult son to help her fund such a plan. Lastly, the Debtor contends that the Trustee's motion should be denied on procedural grounds because the notice requirements of § 363(b)(1) may not have been complied with, since it appears that the purchase and sale contract was executed prior to the required statutory notice being given.

The Trustee takes the position that § 706(a) gives the debtor a presumptive, but not absolute, right to convert from chapter 7 to chapter 13. He argues that his position is supported by the cases of *In re Marcakis*, 254 B.R. 77 (Bankr.E.D.N.Y. 2000) (debtor's request to convert denied), and *In re Krishnaya*, 263 B.R. 63 (Bankr. S.D.N.Y.2001) (debtor's request to convert granted).[2] The Trustee contends that the procedural requirement that a conversion be sought by motion suggests that the court play an active role. *See* Trustee's Opp'n at 3. Additionally, the Trustee argues that when a debtor seeks to convert a chapter 7 case to one under chapter 13, the court may use its discretionary powers under § 105 to prevent abuse of the bankruptcy process. In this case, the Trustee suggests that the court's use of § 105 is warranted because the Debtor received a discharge and there are no remaining debts to be paid through a chapter 13 plan, the Debtor has not proposed a plan, the Debtor has no apparent ability to fund a plan, and that she moved to convert for the sole purpose of preserving the Land, which is a non-exempt asset of the estate. In this regard, the Trustee asserts that the Debtor knew or should have known that when she filed her chapter 7 petition, the Land would become part of the bankruptcy estate and, therefore, be subject to liquidation. Finally, the Trustee makes the policy argument that to allow a conversion in this case would send the signal to future debtors to "hedge their bets." *Id.* at 7. It is the Trustee's belief that such "legal maneuvering" should not be permitted. *Id.*

## ISSUES

The primary issue presented is whether a debtor has an absolute right to convert and, if not, what conditions may pose an impediment to conversion. Ancillary issues are the appropriate procedure to implement the conversion and what effect, if any, a chapter 7 discharge has on a proposed conversion.

## DISCUSSION

■ The controversy in this case is generated by the express language of § 706(a), which states in pertinent part that "[t]he debtor *may* convert a case under this chapter to a case under chapter 11, 12, or 13 of this title *at any time*, if the case has not yet been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a) (emphasis added).[3] This statutory language has been the subject of much debate, and courts are divided on the question of whether a debtor has an absolute right to convert from chapter 7 to chapter 13. *See In re Krishnaya*, 263 B.R. at 65 ("The authorities are considerably less than uniform as to whether the right to convert to chapter 13 is wholly absolute by statute.") Interestingly, three competing views have emerged.

First, one line of authority gives literal meaning to the statute and holds that the law is clear and unambiguous; therefore, there is no authority to deny conversion based on any factors other than those explicitly stated in § 706.[4] *See, e.g., In re*

---

2. These cases are discussed in detail *infra*. *See* discussion *infra* at 14–17.

3. Because § 706 expressly permits only an initial conversion from chapter 7 to a reorganization or repayment plan case, the question of what statutory authority, if any, would permit a previously converted case to reconvert must await another case on another day.

4. As discussed *infra*, § 706(d) further limits the right to convert to debtors who are eligible for another chapter under § 109. At the time this case was filed, under § 109(e), only an individual with regular income that owed, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated,

*Young,* 237 F.3d 1168 (10th Cir.2001); *In re Finney,* 992 F.2d 43 (4th Cir.1993);[5] *In re Martin,* 880 F.2d 857 (5th Cir.1989);[6] *In re Miller,* 303 B.R. 471 (10th Cir. BAP 2003); *Pequeno v. Schmidt,* 307 B.R. 568 (S.D.Tex.2004); *In re Widdicombe,* 269 B.R. 803 (Bankr.W.D.Ark.2001); *In re Rossen,* Case No. 99–10383, slip. op. (Bankr.D.Vt. July 10, 2000); *In re Kleber,* 81 B.R. 726 (Bankr.N.D.Ga.1987); *In re Easley,* 72 B.R. 948 (Bankr.M.D.Tenn. 1987). This line of authority has been characterized as the majority view. *In re Widdicombe,* 269 B.R. at 806. *But see In re Ponzini,* 277 B.R. 399, 403 (Bankr. E.D.Ark.2002) (asserting that there is no longer a clear majority).

Second, one branch within the minority holds that the right to convert is absolute only in the absence of "extreme circumstances." *See, e.g., In re Kuntz,* 233 B.R. 580 (1st Cir. BAP 1999) (debtor's bad faith must be egregious to constitute extreme circumstances); *In re Carter,* 285 B.R. 61, 65 (Bankr.N.D.Ga.2002) ("While the Court need not define exactly the type of extreme circumstance that would lead it to deny a motion to convert, the Court would consider evidence that a debtor is seeking to avoid payment of debts, rather than to make an honest effort to repay them."); *In*

*re Krishnaya,* 263 B.R. at 70 (without defining extreme circumstances, the court found that conversion from chapter 7 to chapter 13 for the purpose of avoiding dischargeability litigation fell below the threshold for denying conversion); *In re Starkey,* 179 B.R. 687 (Bankr.N.D.Okla. 1995); *In re Spencer,* 137 B.R. 506 (Bankr. N.D.Okla.1992).

Third, the other branch within the minority utilizes a broad "totality of the circumstances test," considering factors such as the possibility of abuse, prejudice to other parties or creditors, eligibility, and "all the circumstances generally" to decide whether "conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code." *In re Marcakis,* 254 B.R. at 82; *see also In re Porter,* 276 B.R. 32 (Bankr.D.Mass.2002); *In re Pakuris,* 262 B.R. 330 (Bankr.E.D.Pa.2001); *In re Dews,* 243 B.R. 337, 340 (Bankr.S.D.Ohio 1999) ("[C]ourts should make a preliminary inquiry as to the quality of any proposed chapter 13 plan, and whether it would meet confirmation requirements."); *In re Sully,* 223 B.R. 582, 585–86 (Bankr. M.D.Fla.1998) (focusing extensively on the debtor's ability, or lack thereof, to propose a feasible plan); *In re Tardiff,* 145 B.R. 357 (Bankr.D.Me.1992).[7]

secured debts of less than $871,550 would have been eligible for chapter 13 relief. For cases commenced on or after April 1, 2004, the amounts in effect are $307,675 and $922,975, respectively. 11 U.S.C. § 104(b) (providing for periodic adjustment of each dollar amount in Title 11 at 3–year intervals).

5. The *Finney* court stated that "[C]ongress intended § 706(a) to confer 'the one time absolute' right to convert from liquidation to reorganization because 'the debtor should always be given the opportunity to repay his debts.'" *In re Finney,* 992 F.2d at 44 (citation omitted). Yet, the court went on to state, "We express no opinion on what circumstance, if any, would justify invocation of § 105(a) to deny a § 706(a) motion outright."

*Id.* at 45. This apparent contradiction has led to other courts' citation of the case for whichever respective position the citing court wishes to adopt.

6. Like *Finney,* the *Martin* case also presents an enigma. The case is cited both for the proposition that the debtor has an absolute right to convert such that the court lacks discretion to block the conversion, and for its converse. The confusion emanates from footnote 2, which references cases that deny the right to convert only in extreme circumstances without editorializing about the appropriateness of that conclusion.

7. While there seems to be some overlap between the two minority positions, since each

Having carefully considered the competing positions and for the reasons discussed *infra*, the court is convinced that the strict majority opinion reflects the correct interpretation of § 706(a).

## I. THE RIGHT TO CONVERT

Section 706(a) must be read in conjunction with subsection (d), which provides:

> **(d)** Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under that chapter.

11 U.S.C. § 706(d). In determining whether § 706, as a whole, confers an absolute right of conversion upon the debtor, courts are guided by the following legislative history:

> Subsection (a) of this section gives the debtor the one-time *absolute* right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.
>
> . . . .
>
> Subsection (d) reinforces section 109 by prohibiting conversion to a chapter unless the debtor is eligible to be a debtor under that chapter.

S. REP. No. 95–989, at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880 (emphasis added). Absolute is defined as "[f]ree from restriction; qualification, or condition." BLACK'S LAW DICTIONARY 7 (7th

ed.1999). Yet, we know from the limitations found in § 706(a) and (d), *i.e.,* "if the case has not been converted" and "unless the debtor may be a debtor under such chapter," that the right to convert is *not* absolute. Thus, the term, as it appears in the legislative history, is misleading.

> A statutory right that is absolute cannot have court-made exceptions. If that were the case, it would not be an absolute right. Such an interpretation would be the statutory or judicial equivalent of being somewhat pregnant. One is either pregnant or not. A right is either absolute or it is not.

*Pequeno v. Schmidt,* 307 B.R. at 579.

This does not however mean that the court may look beyond the four corners of § 706 to answer a conversion request. The court must recognize the significance of Congress' grant to the debtor of a "right to convert" which cannot be waived. Right is defined as "[a] power, privilege or immunity secured to a person by law." BLACK'S LAW DICTIONARY at 1322. Rather than subject this right to a myriad of restrictions, Congress has conditioned it only upon (1) lack of a prior conversion and (2) eligibility. The intent of Congress is clear: that a debtor has the right to convert subject to these two qualifications.

Courts that have joined the minority have done so based upon an alternate statutory interpretation of § 706, court discretion invoked by the procedure necessary to implement a conversion, and/or use of the court's inherent authority pursuant to § 105. The minority has closely followed the seminal cases of *Marcakis* and *Krishnaya.*[8] Those courts that have adopted

---

considers a debtor's bad faith when determining whether to allow conversion, those courts within the extreme circumstances branch generally limit their investigations to the question of bad faith without delving into

other equitable considerations or confirmation issues.

**8.** The *Krishnaya* court relied heavily upon the authority of *Marcakis,* adding that "while the

*Marcakis* generally quote Judge Eisenberg for the following:

> In the case now before the Court, the relevant statutory language has remained an important starting point for determining the scope of [§] 706(a).
>
> . . . .
>
> . . . In looking to the actual verbs used in the statute, the Court agrees that, simply put, "shall" means "must," something mandatory, and "may" connotes the permissive, the possible; and when turning to section 706, reading all subsections as a context, as did the *Starkey* court, *supra,* and indeed as did the *Barbieri* court with section 1307, subsections (b) and (c) of section 706 speak of what a court "may" do concerning conversion.
>
> . . . .
>
> The very first words of section 706(a)—"The debtor may convert a case . . ."—is in the nature of the permissive. . . . Since a motion must be made and approved by the Court, then a court must consider in its decision to permit or deny the possibility of abuse; prejudice to other parties or creditors; the eligibility to be a Debtor under the converted section of the code; and all the circumstances generally. The statutory language clearly states that the Debtor may convert his case, but does not state that he or the Court "shall" honor his request.
>
> The Court must determine if the conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code.

*In re Marcakis,* 254 B.R. at 80–82. While the court appreciates the minority courts' motivation to avoid damage to the bankruptcy system or creditors in each individual case, *see Pequeno v. Schmidt,* 307 B.R. at 578, the court respectfully disagrees with the assertions that it is statutorily permitted to consider factors other than prior conversion and eligibility, or that it has a right to exercise equitable discretion within the parameters of a § 706(a) motion.

First, characterizing the language of the statute as a "starting point," thereby implying that the court may look beyond both the statute itself and the legislative history, ignores the plain meaning rule which demands that the express words of the statute be given their proper effect. *See In re Porras,* 188 B.R. at 379. As Judge Clark so eloquently stated:

> Any judge-made exception that operates to place a gloss on statutory language as implacable as that found in section 706(a) poses a significant danger of judicial legislation. The Code (like many other federal enactments) is full of examples of statutes which work less well in practice than Congress anticipated they would when the language was being developed by staffers and debated in committees. No doubt, the "one time right to convert" found in section 706(a) is one such statute, inviting as it does strategic maneuvering to avoid unpleasantness (or worse). It devolves to a court to make statutes fit in practice, which is why published judicial decisions are so important even in areas heavily fleshed out by statute or code. But courts exercising that authority must always be mindful of their limits. Under our system of government, the coordinate branches of government are expected to exercise a certain restraint, lest

Court should have the power to protect its jurisdiction from abuse, it should regard the right to convert from chapter 7 to chapter 13 as presumptive, and should deny the right to convert only for lack of statutory qualification or extreme circumstances." *In re Krishnaya,* 263 B.R. at 69 (footnotes omitted).

they stray into another branch's bailiwick. For the courts, the greatest temptation is to "fix" statutes with judicial decisions having the force of law. It is a temptation which must be assiduously avoided, in deference to our structure of government. THE FEDERALIST, No. 51, (Wesleyan University Press, Jacob E. Cooke, editor, 1961), at p. 349. *Id.* at 378–79. The Court of Appeals made clear in the case of *In re Barbieri,* 199 F.3d 616 (2d Cir.1999), that the court may not disregard the plain language of a statute and exercise discretion where none is afforded. *Id.* at 619, 621 (addressing the issue of an absolute right to dismiss a Chapter 13 petition pursuant to § 1307(b)).[9] There is nothing in § 706 or elsewhere in the Code that demands more of a converting chapter 7 debtor than that he meet the § 109(e) requirements. *In re Miller,* 303 B.R. at 476. If Congress wishes to invoke the equitable discretion of the court, it does so. *See* 11 U.S.C. § 1112(d)(3) (a requirement to convert from chapter 11 to chapter 12 is that it be equitable). Bankruptcy courts are not, for any reason, at liberty to redraft the statute. *In re Barbieri,* 199 F.3d at 621.

The court is perplexed by the *Marcakis* rationale equating the court's role under § 706(a) with that under § 706(b) and/or (c). Section 706(b) speaks to what the court "may" do by exercising its discretion in cases of involuntary conversion; Section 706(c) speaks to what the court "may not" do—it may not convert a case under chapter 7 to one under chapter 12 or 13 unless the debtor requests such conversion. By contrast, subsection (a) speaks to what the *debtor* may do, which suggests that there can be no discretionary interference from the court. Cases of involuntary conversion under § 706(b) are treated as contested matters pursuant to Rule 9014, and the ultimate decision is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest. S. REP. No. 95–989, at 94. This is far removed from a debtor exercising a statutory right to convert via the less stringent provisions of Federal Rule of Bankruptcy Procedure[10] 9013. As explained by Judge Brown in *Rossen,* "[§] 706(a) leaves conversion to the discretion of the debtor ... It may be *contrasted* with § 706(b) which leaves conversion under different circumstances to the discretion of the court." *Rossen,* slip. op. at 6 (emphasis added). Moreover, the specific words emphasized by the *Marcakis* court, at least as to chapters 12 and 13, have to be permissive, the alternative being some form of "the debtor shall convert" which connotes an involuntary conversion. That would violate both § 706(c), which specifically prohibits the court from converting a chapter 7 case to one under chapter 13 unless the debtor requests conversion, and the United States Constitution.[11] The use

---

**9.** *Barbieri* cautions bankruptcy courts to use their equitable powers sparingly. "[T]he equitable powers emanating from § 105(a) ... are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *In re Barbieri,* 199 F.3d at 620–21 (citing *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987) (internal quotation marks omitted)); *Accord In re Jamo,* 283 F.3d 392, 403 (1st Cir.2002) ("Section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand .... The authority

bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.").

**10.** Unless otherwise indicated, all further Rule references relate to the Federal Rules of Bankruptcy Procedure.

**11.** The Thirteenth Amendment provides in relevant part:

of the word "may" in § 706(a) simply puts a one-time option of converting in the debtor's hands; the debtor may or may not choose to exercise the option.[12]

■ Second, the *Marcakis* court's procedural bootstrapping completely ignores that the court's jurisdiction emanates not from the Rules but from Title 28 of the United States Code. The Rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. While motion practice is required to answer any questions of fact relating to the eligibility status of the debtor, the court cannot unilaterally expand or contract it's authority or responsibilities by virtue of a procedure that is designed to address specific issues of fact raised by § 706(a). "While we recognize that conversion can occur only upon a court order, we do not agree that such a requirement in the rules alone automatically invokes a court's discretion." *In re Miller*, 303 B.R. at 477. The procedure for conversion under § 706(a) is plainly set forth in Rule 1017(f)(2), which provides that voluntary conversion shall be treated on regular motion practice in accordance with Rule 9013.[13] "[R]ule 1017(f) is still an exercise of the rulemaking power and cannot deprive parties of statutory rights." *In re Krishnaya*, 263 B.R. at 65.

Finally, as contemplated by Congress and provided for in the Code, questions of bad faith, abuse of process, prejudice to creditors, and so forth, may be addressed within the confines of the newly minted chapter 13 case while preserving all rights, concerns, and potential objections. *See, e.g., In re Young*, 237 F.3d at 1174 (the provisions of § 1325 ensure that a chapter 13 plan arising out of a conversion from chapter 7 will be properly scrutinized by the bankruptcy court before the plan is confirmed, mitigating the danger of abuse); *In re Oblinger*, 288 B.R. 781, 786–87 (Bankr.N.D.Ohio 2003) (issues of good faith, best interests of creditors, best efforts of the debtor and feasibility "should be addressed in the context of a complete record developed in a confirmation hearing on a proposed Chapter 13 plan actually noticed to and evaluated by creditors and the Chapter 13 trustee, not in the context of a hearing on the propriety of conversion in the first instance" (citations omitted)); *In re Porras*, 188 B.R. at 379 (all parties have ample remedies to meet any abuse inflicted by conversion, including re-conversion or sanctions under Rule 9011(a)). The court disagrees with the minority positions not only because they grossly contort the Code, but also because they confuse confirmability with eligibility. The concerns of the minority will be addressed in due time—post-conversion, but pre-confirmation. Until the case has been converted and a plan has been filed,[14] bad

---

Section 1. Neither slavery nor involuntary servitude ... shall exist within the United States.

**12.** The court notes that §§ 706(a), 1208(a) and 1307(a) are worded exactly the same 'except for the previously converted case language in § 706(a). It is beyond question that chapter 12 and 13 debtors may convert to chapter 7 at their whim since Rule 1017(f)(3) provides for only a notice of conversion that is effective without court order. Both §§ 1208(e) and 1307(f) have the same eligibility prerequisites found in § 706(d), but it is superfluous as to conversion from chapters 12

or 13 to chapter 7. Any debtor who is eligible for either chapter 12 or 13 would be eligible for chapter 7. Thus, there would be no limitation to prevent the conversion and no need for a hearing. The same would be true for a § 706(a) conversion except for the two qualifications noted *supra*.

**13.** For a more detailed analysis of these Rules, *see* discussion *infra* Part II at 15–16.

**14.** Nothing in the Code or Rules requires the filing of a plan with a motion to convert. Rather, Rule 3015 provides:

faith, treatment of creditors, "disposable income," feasibility, etc., are not ripe for adjudication.

Section 706(a) is silent on debtor motivation, but when Congress wants bad faith addressed, it so states. *See* 11 U.S.C. § 348(f)(2) ("If a debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion."); § 1129(a)(3) (the court shall confirm a chapter 11 plan only if the plan has been proposed in good faith); § 1225(a)(3) (same with respect to a chapter 12 plan); § 1325(a)(3) (same with respect to a chapter 13 plan).

■ By crafting § 706(a) as it did, Congress did not leave the door open for abuse. While bad faith cannot prevent the debtor from converting from chapter 7 to chapter 13, once the conversion is done, bad faith would constitute grounds for an objection to confirmation pursuant to § 1325(a)(3) or cause for reconversion under § 1307(c).[15] While one might consider it frivolous to convert only to reconvert, such a procedure allows for compliance with both the Congressional mandate of § 706(a) and the court's duty to protect the bankruptcy process from abuse. *Pequeno v. Schmidt*, 307 B.R. at 580. Any request to reconvert is more properly determined by the court as part of the chapter 13 confirmation process. *In re Little*, 245 B.R. 351, 356 (Bankr.E.D.Mo.2000) (ci-

tation omitted). "[I]f this extra-procedural step needs to be eliminated, it needs to be done by Congressional amendment to the statute, not by judicial fiat." *Pequeno v. Schmidt*, 307 B.R. at 580 n. 98 (citation omitted). If necessary, the court may act sua sponte to preserve the integrity of the process.

Other than bad faith, unique circumstances may arise upon conversion that bring into question the appropriateness of the conversion and the need to balance the interests of the debtor against those of the creditors. As exemplified by *In re Sully*, 223 B.R. 582, conversion may place liquid assets in the debtor's hands. In that case, a personal injury action was settled for $40,000, and the debtor filed a conversion request to gain control of the settlement proceeds. The court denied conversion on the grounds of bad faith, infeasibility, and the likelihood that the funds would dissipate without disbursement to creditors. As discussed *supra*, questions of bad faith and feasibility must be answered in the chapter 13 process. Moreover, the issue of proceeds could be resolved in the confines of the conversion motion itself. The court could fashion an order restricting the use of funds pending a further order or, in the extreme, the court could order dual signatories on the account. While § 1306(b) provides that the debtor remains in possession of all property of the estate, the earliest it could revest in the debtor, pursuant to § 1327(b), is at confirmation. Thus, the court could—and it must, even in

---

The debtor may file a chapter 13 plan with the petition. If a plan is not filed with the petition, it shall be filed within 15 days thereafter . . . . If a case is converted to chapter 13, a plan shall be filed within 15 days thereafter . . . .
FED. R. BANKR P. 3015(b).

15. Because the issue is not presently before the court, no opinion is given on whether the Trustee would have standing to seek an invol-

untary conversion after the case has been converted from chapter 7 to chapter 13. *But see In re Verdi*, 241 B.R. 851, 858 (Bankr. E.D.Pa.1999) (Formerly appointed chapter 7 trustee, as a "party in interest," may move for reconversion because "[t]he Trustee is an administrative claimant who need not file a proof of claim to have a claim against the Debtor's estate.").

a case such as *Sully,* follow the clear intent of § 706 while protecting all parties in interest pending the confirmation process.

The case of *In re Pakuris,* 262 B.R. 330, also presents a variation on the standard conversion situation. There, the chapter 7 trustee was administering a lawsuit that was not originally scheduled by the debtor. The trustee noticed a proposed settlement. In response, the debtor opposed the settlement and moved to convert. The court expressed concern that by returning control of the lawsuit to the debtor, the creditors would lose the benefit of the trustee's efforts and ultimately bear the risk of a poor effort by the debtor. Under a strict reading of § 706, this is also insufficient to prevent conversion, but this does not mean that procedural safeguards are lacking. Rather, the debtor would still have to meet the minimum amount negotiated by the trustee and convince the court that any plan had been proposed in good faith and was viable enough to confirm while relying on the debtor's efforts to shepherd the lawsuit. Furthermore, the question of who should bear the risk for a volatile asset, such as a lawsuit or publicly traded securities, is not an uncommon question in chapter 13 practice. The question may just as easily exist in an originally filed chapter 13 as in a converted chapter 7. In the former, it would be answered during the confirmation process, but not before. In an egregious case, the court could order a hearing on shortened notice to specifically address whether there is cause to reconvert the case and return control to the previously appointed trustee or, to ensure that all parties were on notice, direct that no assets be sold, settled, or transferred without further order of the court. If the case involved real property, the court could order the chapter 13 trustee to file a notice of the commencement of the debtor's bankruptcy case in the county clerk's office where the real property is located.

For all of the foregoing reasons, the court agrees that the strict interpretation of § 706(a) is the correct one. The debtor has an unfettered right to convert provided the debtor can meet the qualifications of § 706. As stated *supra,* the debtor's motion to convert may be denied only upon two grounds: (1) prior conversion or (2) ineligibility pursuant to § 109.

## II. PROCEDURE NECESSARY TO EFFECTUATE CONVERSION

■ The conversion of a chapter 7 case to one under chapter 13 pursuant to § 706(a) is governed by Rules 1017(f)(2) and 9013. Rule 1017(f)(2) provides that conversion under § 706(a) "shall be on motion filed and served as required by Rule 9013." FED. R. BANKR. P. 1017(f)(2).[16] Rule 9013 provides:

A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought. Every written motion other than one which may be considered ex parte shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.

---

16. The 1987 Advisory Committee Note to Rule 1017(d), which the 1999 amendments redesignated as Bankruptcy Rule 1017(f), states that the subdivision was amended to clarify that conversion pursuant to the cited sections is not a contested matter under Rule 9014 and that "[n]o hearing is required on these motions unless the court directs."

FED. R. BANKR. P. 9013. Thus, Rule 9013 provides four potential avenues to obtain an order of conversion: (1) application; (2) oral motion; (3) written motion offered ex parte; or (4) written motion served on those parties directed by the rules or specifically by the court.

■ There is at least one seemingly uniform conclusion among courts that have decided the issue *sub judice:* disputed questions of fact may exist with respect to the debtor's eligibility for chapter 13 pursuant to § 109. Keeping in mind standards of due process and the congressional mandate of § 706(d) that a case may not be converted unless the debtor is eligible for that chapter, the only appropriate procedure is a written motion served on the necessary parties. While the court may resolve the issue of prior conversion simply by examining the docket, the same is not true with respect to eligibility. *But see* 9 COLLIER ON BANKRUPTCY ¶ 1017.05[1][b] at 706–12 (15th ed. rev. 2003) ("Normally, the court can simply check the docket in the case to determine whether the debtor is entitled to the . . . conversion sought in the motion."). The court docket would not answer questions of fact such as whether the (1) debtor has regular income within the meaning of § 101(30);[17] (2) schedules regarding debt structure are accurate as to amounts; or (3) any or all of the debts are contingent and/or unliquidated. To presume that the court or the clerk of court will peruse the information provided by the debtor, answer attendant questions of fact, and arbitrarily decide the fate of the petition without input from any party in interest is impractical at best and possibly violative of concepts of due process at worst. With inquiries such as these, the court generally looks to the case trustee, the United States Trustee and creditors to provide information and, if appropriate, objections to the debtor's eligibility status. They must therefore be given notice and the opportunity to appear and be heard. Accordingly, the court elects to direct the movant requesting a case be converted pursuant to § 706(a) provide at least 20 days notice of the hearing to the trustee and all creditors pursuant to Rule 2002(a)(4).

In the past, the court has signed ex parte applications to convert a case from chapter 7 to chapter 13; it will no longer do so. Although most requests to convert will probably be unopposed, the court will not assume that the clear directives of § 706 have been automatically met and/or complied with. The requirement of a motion will not prejudice the debtor because if there is no opposition, the matter will be routinely granted on a default basis pursuant to Local Rule 9013–4(b)(9). If time is of the essence, the debtor may request a reduction in time required to effectuate the motion pursuant to Rule 9006(c). In either event, if there are grounds to deny the conversion which were not apparent from a reading of the case history, an opportunity to be heard will help ensure that justice prevails. If the debtor affirmatively chooses to convert, then, pursuant to Rules 1017(f)(2), 9013, and 2004(a)(4), a hearing would be scheduled, if necessary, to allow an airing of any eligibility issues.

## III. THE DISCHARGE ISSUE

■ Except as provided in § 523, a discharge under § 727(a) discharges a debtor from all debts that arose before the date of

---

17. An "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30).

the order for relief under chapter 7. 11 U.S.C. § 727(b). There is nothing in the Code prohibiting a debtor from converting a case from chapter 7 to chapter 13 once a discharge has been granted. Nevertheless, the topic of whether the issuance of a chapter 7 discharge affects the ability of a debtor to convert to a plan chapter has generated much case law and, at times, very little analysis.

Many courts have come to the conclusion that the prior issuance of a discharge is fatal, in and of itself, to a § 706 conversion. *In re Marcakis,* 254 B.R. at 82–83; *see also In re Lesniak,* 208 B.R. 902 (Bankr.N.D.Ill.1997); *In re Schwartz,* 178 B.R. 340, 345 (Bankr.E.D.N.Y.1995); *In re Jeffrey,* 176 B.R. 4 (Bankr.D.Mass.1994); *In re Tardiff,* 145 B.R. 357 (Bankr.D.Me. 1992). Courts prohibiting conversion after discharge assert that once a discharge has been issued there are no debts to be paid under a plan. *Id.*

The problem with this line of authority, with all due respect, is that the courts have reached a conclusion of law that is based more on citation to each other's decisions than on any critical analysis of the Code, the Rules, or existing case law. There is little or no discussion of the law, just the shared sentiment that it does not feel right that a chapter 7 debtor may convert to chapter 13 and, in effect, get two discharges for the price of one filing fee. This court respectfully disagrees with this line of cases. Instead, the court agrees with Judge Mitchell's rationale and conclusion in the case of *In re Mosby,* 244 B.R. 79 (Bankr.E.D.Va.2000), that there is no support in the Code or Rules for the argument that the issuance of a discharge bars conversion to chapter 13. *Id.* at 88; *see also In re Oblinger* 288 B.R. 781; *In re Carter,* 285 B.R. 61 (Bankr.N.D.Ga.2002).

██ A discharge operates as an injunction against the collection of a discharged debt "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). There is nothing in the Code to suggest that a discharge eliminates the creditors' claims against the bankruptcy estate. *In re Mosby,* 244 B.R. at 87. "Creditors with valid claims against the bankruptcy estate on the date the bankruptcy petition is filed do not lose them simply because the debtor is granted a discharge or the case is converted to another chapter." *Id.* Most often, in a chapter 7 case, the sequence of events is such that a debtor receives his or her discharge prior to the trustee making distributions to creditors. *Id.* Creditors do not lose their right to receive their pro rata share of the assets of the estate to be distributed because their debts were discharged.

██ It is also instructive to note that when Congress wishes to inject a prohibition against two discharges in one case, it expressly does so. Section 1112(d)(2) specifically disallows a conversion from chapter 11 to chapter 12 or 13 after the debtor has received a chapter 11 discharge. No such prohibition is found in § 706. It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another. *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). The court is concerned, however, that when a chapter 7 case is converted post-discharge, creditors who have received notice of the discharge will be confused as to the status of their claims upon receipt of notice of the conversion to chapter 13. In an attempt to clarify the status of the debtor's discharged debts, the court will require language in an order converting a case from chapter 7 to chapter 13 that (1) the order shall be served upon all creditors and parties in interest, and (2) if the debtor's discharge has been issued extinguish-

ing personal liability, a claim may still be filed against the chapter 13 estate.

## IV. THE FACTS OF THE CASE

 In this case, there have been no assertions that the Debtor previously converted her case or that she is ineligible for chapter 13. Thus, the court finds there are no impediments to the Debtor converting her chapter 7 case to chapter 13.[18]

Whether the Debtor will be able to confirm a chapter 13 plan is left for another day. The court is troubled by the Debtor's apparent $1,000 oversight in her income and has concerns about the proposed monthly gift from a third party to help fund a plan. While these concerns may raise questions of good faith and feasibility relevant to a future confirmation hearing under § 1325(a)(3) and (a)(6), respectively, they are not yet ripe for judicial intervention.

 The Trustee voices concern that the credibility of chapter 7 trustees will be tarnished if they advertise and negotiate sales with third parties that they may not be in a position to consummate should a debtor be permitted to convert his or her case prior to the sale. Any policy arguments, however, must be directed to the legislative branch of the government. "[Courts] may not arrogate to ourselves the legislative role. For when we do, we cross that line that assures appropriate separation of powers, and presume to ourselves a role ... entrusted to men and women [who are] answerable to the people for their actions." *In re Porras*, 188 B.R. at 379 n. 4. The court may only enforce legislation as it exists, whether it

is "good or bad, far-sighted or improvident, useful or misguided." *Id.* In any event, a sale of an estate asset requires court approval unless it is in the ordinary course of business. 11 U.S.C. § 363. Because court approval is a contingency of a sale, a contract with a bankruptcy trustee is never absolute. There is always the chance that a trustee may not obtain approval for a sale or that another entity will offer a higher amount. Thus, any individual attempting to purchase an estate asset must do so with their eyes wide open, realizing that finality is achieved not with a contract but with a court order.

In this case, the Debtor filed her motion to convert in response to the Trustee's motion. The court approval contingency has not yet been satisfied.[19] Therefore, no prejudice occurs to the Trustee by virtue of the Debtor's conversion.

## CONCLUSION

Based upon the foregoing, the within case is converted to one under chapter 13, and a chapter 13 Trustee shall be appointed.

The Debtor's counsel shall submit an order in conformance with this decision.

---

18. Because the court finds no impediment to conversion from chapter 7 to chapter 13 post-discharge, it need not reach the issue of what authority, if any, exists to permit a debtor to set aside or vacate his or her discharge once issued.

19. If the sale had previously been approved by the court, the Debtor would have needed to move for reconsideration pursuant to Rule 9023, or relief from the order pursuant to Rule 9024.